## Case No. 14,318.

### TYSON v. The PANAMA.

[See Case No. 11,697.]

## Case No. 14,319.

### TYSON et al. v. PRIOR.

[1 Gall. 133.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

SALVAGE—AMOUNT OF COMPENSATION—DERELICT.

1. The amount of salvage rests in the sound discretion of the court In general it ought not to be less than one third, unless the property be very valuable, or the services very inconsiderable.

See the case briefly stated in Curt. Adm. Dig. tit. "Salvage," pp. 419, 426; The Henry Ewbank [Case No. 6,376]; Bearse v. Three Hundred and Forty Pigs of Copper [Id. 1,193]. See Abb. Shipp. (Shee's 7th Ed.) pp. 554, 594, c. 12, where all the English cases down to 1844 are collected.

[Cited in Hand v. The Elvira, Case No. 6,015; The Emulous, Id. 4,480; Smith v. The Stewart, Id. 13,070; The John Wurts, Id. 7,434.]

2. A case of derelict can occur only where the property has been abandoned without the hope or intention of recovery.

See Rowe v. The Brig [Case No. 12,093]; The Boston [Id. 1,673]; Flinn v. The Leander [Id. 4,876]; L'Esperance, 1 Dod. 46.

[Cited in Cromwell v. The Island City, Case No. 3,410; The Cleone, 6 Fed. 525; The Viola, 5 C. C. A. 283, 55 Fed. 832.]

[Appeal from the district court of the United States for the district of Massachusetts.]

This was a case of salvage [by Benjamin Tyson and others, claimants of eight hundred barrels of flour, against Matthew Prior] claimed by the libel, as due from property derelict.

G. Blake, for salvors.

C. Jackson, for claimants.

STORY, Circuit Justice. The schooner Polly, with a cargo of flour, &c. on board, sailed on the 5th of August, 1809, from Baltimore, bound to Lisbon. About the 30th of the same month, the schooner was dismasted in a gale of wind, and continued for about nine days sailing under jurymasts, and in a very distressed situation. Afterwards, on the 4th of September, the schooner was fallen in with, about the latitude 43° 50' N. and longitude 46° W. by the brig Triton from Liverpool bound to Boston; and by another brig, which afterwards by consent parted from them. The whole crew of the Polly went on board of the Triton; and at the request of the master of the Polly, the Triton remained along-side of her during that day and the following night. Early on the next morning, while the brig was lying to the leeward of the schooner, the ship Reserve, commanded by the libellant, Matthew Prior, hove in sight, and soon afterwards boarded the Polly, and after bearing down to the leeward, spoke with the Triton. The Tri-

ton being nearly fully laden, it was agreed, that the captain and crew of the schooner should go on board of the ship, and that the ship should take on board whatever of the cargo might be saved from the schooner. This was accordingly done. The brig soon afterwards parted company, and the weather continuing moderate, Captain Prior took the schooner in tow for six or seven days, and during that time took out of her the articles libelled. The schooner's crew assisted in taking out the cargo; and no accident happened, during the time, except the staving of one boat of the ship, and the loss of fifteen barrels of flour. The schooner was then abandoned, and the ship arrived safely in Boston. Various claims were interposed in the court below; but as no appeal has intervened, except in behalf of the owners of the goods saved, no notice is necessary to be taken of the others. The gross value of the whole property saved, appears to be $6,770; and the court below adjudged a salvage of one third of this gross value.

It is admitted on all sides, that the salvors have a meritorious claim; and the only controversy is, as to the amount, which ought to have been decreed. The original libel appears to have been founded on the supposition, that this was a case of derelict. This was a clear mistake. For it is not sufficient to constitute derelict, that the vessel should be abandoned; but the abandonment should be without the hope of recovery; and without the intention of ever returning to the vessel again. The Aquila, 1 C. Rob. Adm. 37. And accordingly upon the argument this ground was abandoned. What shall be the amount of salvage decreed, in cases of this nature, must necessarily rest in the sound discretion of the court. In the exercise of that discretion, different minds of equal force and elevation may entertain very different judgments. The rate of salvage is not governed by the mere extent of labor; but is a result from the combination of various considerations. The value of the property saved, the degree of hazard in which it is placed, the enterprise, intrepidity, and danger of the service, and the policy of a liberal allowance for the timely interposition of marine assistance, all conspire to heighten the amount. Where the value of the property is small, and the hazard is great, the allowance is always in a greater proportion. On the other hand, where the value is large, and the services are highly meritorious, the proportion is diminished.

I have looked into the cases cited on the argument, and into other leading cases. The Aquila, 1 C. Rob. Adm. 37; The William Beckford, 3 C. Rob. Adm. 355; The Jonge Bastiana, 5 C. Rob. Adm. 322; The Mary Ford, 3 Dall. [3 U. S.] 188; Mason v. The Blaireau, 2 Cranch [6 U. S.] 240; Bond v. The Cora, 2 Pet. [27 U. S.] 361. In The Aquila two fifths of 12,000 pounds were allowed; and in The Jonge Bastiaan, two thirds of 3,400 pounds; and in our own courts, the allow-

---

[1] [Reported by John Gallison, Esq.]

ance in the three cases, which I have cited, was one third of the gross amount, although the average value of the property was about $50,000. It is undoubtedly true, that in some of these cases the services were of very superior merit; but the value made the compensation an extremely liberal allowance. It is argued in the present case, that there was no hazard of life, and no uncommon exertions. The ship however was detained a week on her voyage, and the services appear to have been rendered with alacrity. By the stoppage, during this time, it seems to have been generally considered, that a deviation resulted, and of course that the ship was put at the hazard of the owner. Mason v. The Blaireau [supra]; Bond v. The Cora, 2 Pet. [27 U. S.] 361. The property also, which was saved, is of small value; and even one third does not offer a very strong inducement to hazard the fate of a voyage upon such a salvage. I think that sound policy dictates, that the compensation should not in general be less than one third, unless the property be very valuable, or the services be very inconsiderable. If I were to reverse the decree of the district court in this case, I do not perceive any solid distinction, on which I could rest it. It was an exercise of discretion, which violated no principle, and does not seem to have assumed any extraordinary latitude. It is best for all parties, that litigations of this nature should be speedily settled; and when I cannot perceive an undue inflammation of the rate of salvage, I do not think, that, sitting in an appellate court, I should nicely balance the subordinate distinctions of cases, whose complexions carry a plain merit and humane interposition.

No objection has been taken to the distribution of the one third allowed for salvage, by the court below; and I therefore give no opinion, as to what ought to be done in such particulars, when the parties bring the subject into contestation. I affirm the decree of the court below, with costs.