## Case No. 4,480.

### The EMULOUS.

[1 Sumn. 207.]

Circuit Court, D. Massachusetts. Oct. Term, 1832.

STORY, Circuit Justice. This is clearly, in my judgment a case of meritorious salvage, for which the salvors, and especially the masters and crews of the Superior and Hero are entitled to a fair recompense. It is not, as has been suggested, (rather than argued,) at the bar, a case of derelict; for that can arise only, when there has been an abandonment by the master and crew, without any intention to return to the wrecked property. Here was not only the animus revertendi, but the actual presence of the master, at the time when the salvage service was performed.

The court has been asked upon this occasion to lay down some clear and definite rule, as to what shall be deemed salvage service, and what shall be deemed a mere common contract for labor and services. I take it to be very clear, that wherever the service has been rendered in saving property on the sea, or wrecked on the coast of the sea, the service is, in the sense of the maritime law, a salvage service. If it has been rendered under circumstances, which establish, that the parties have voluntarily, and without any controlling necessity on the side of the proprietors of the property saved, or their agents, entered into a contract for a fixed compensation, or upon the ordinary terms of a compensation for labor and services quantum meruerunt; in either case, it does not alter the nature of the service, as a salvage service, but only fixes the rule by which the court is to be governed in awarding the compensation. It is still a salvage contract, and a salvage compensation. It is true, that contracts made for salvage services are not ordinarily held obligatory by the court of admiralty upon the persons, whose property is saved, unless the court can clearly see that no advantage is taken of the parties' situation, and that the rate of compensation is just and reasonable. The doctrine is founded upon principles of sound public policy, as well as upon just views of moral obligation. No system of jurisprudence, purporting to be founded upon moral, or religious, or even rational principles, could tolerate for a moment the doctrine, that a salvor might avail himself of the calamities of others to force upon them a contract, unjust, oppressive and exorbitant; that he might turn the price of safety into the price of ruin; that he might turn an act, demanded by Christian and public duty, into a traffic of profit, which would outrage human feelings, and disgrace human justice. The salvors, who, at the request of the master of the Emulous, assisted in taking out her cargo and getting her afloat, are certainly entitled to a compensation. But their services are of a nature belonging to the lowest grade of salvage, such as may ordinarily be compensated by daily wages. They understood themselves, if we are to believe the testimony of the master of the Emulous, to enter upon the service for such a compensation; and if they did, they cannot afterwards elect to turn it into a higher grade of service, without any supervening circumstances, changing either the perils or the contract. My judgment is, that a much smaller sum will be an ample remuneration for their services.

In respect to the masters and crews of the Superior and Hero, their services commenced exactly where those of the other salvors terminated. The assistance given by them was prompt and cheerful; their labors arduous, and constant, and persevering; and, at times, not without considerable peril to life, and some hazard to their own vessels. The season of the year was that, in which the weather is usually boisterous and variable; and of course the chances of a successful termination of the enterprise, upon which alone they could entitle themselves to salvage, were proportionably more unfavorable. It has been suggested, that a different course of operations might have been better, and less hazardous. The attempt should have been made, (it is said,) to right the vessel, where she lay; and it is hinted, that perhaps a nearer port might have been reached. But it appears to me that, these suggestions ought not to have any weight in the cause. The parties appear to have acted with good faith, and reasonable skill, and sound discretion. The master himself made no complaint, and the enterprise was completely successful. Under such circumstances, it would be too much for the court to act upon mere afterthoughts and calculations, when the events are known, and other judgments at a distance from the scene of action have intervened. It is far from being certain, that any attempts to right the Emulous would have been successful. And it is certain that they must have occasioned delays, if they had been undertaken. Now, at such a season of the year, on such a coast,

delay itself is often equivalent to loss. Speed and activity in reaching a port are the means, and the only means, of safety. In this very case, if the vessel had remained out another day, there is much reason to believe, that, from the succeeding storm, she would either have been totally lost, or have suffered far more damage. It might, therefore, be truly said, that, here, prompt action was the price of safety. But I put the case upon the common ground of a fair exercise of reasonable skill and discretion; and if another course would have been (as I am not satisfied it would have been) better, I do not think, under such circumstances, it could be permitted to vary the rights of the salvors. I think, then, the salvors are entitled to a liberal salvage, not upon the narrow ground of a mere compensation for labor and services, but upon the larger policy of the maritime law, looking to merit, and effort, and peril, and the duty of encouraging assistance in cases of distress. See The Sarah, 1 C. Rob. Adm. 313, note; The William Beckford, 3 C. Rob. Adm. 355; Rowe v. The Brig [Case No. 12,093].

The question is, what would be a proper salvage under all the circumstances of the case? And here, again, the court is asked to lay down some rules, by which to guide the parties in interest, underwriters as well as owners, in the ascertainment of the proper rate of salvage. That is asking the court to do, what it is utterly impracticable to do, to lay down rules, in cases admitting of an indefinite diversity of circumstances, and endless considerations of value, of perils, of services, and of merit. The subject is necessarily one, in which the reward must depend upon a just estimate of all the circumstances of each particular case. The court may, indeed, assign some general limits to its discretion in certain classes of cases approaching nearly to the same general average merit. For instance, it may say, and indeed it has said, that generally, in cases of derelict, it will not allow more than one half of the value as salvage. But extraordinary cases of great danger and gallantry may occur, in which the court would even desert this rule. On the other hand, it may say, that it will not generally award less than one eighth, (a sum fixed by statute, as a minimum in certain cases of recapture, —salvage act of 1800 [2 Stat. 17],) unless under very peculiar circumstances. Indeed, looking to the general current of decisions, it will be found, that the courts have not commonly allowed less than one third, unless where the services have been quite inconsiderable, or the amount of the property has been very great.[1] Still, this must be subject to many qualifications; and it will be found very difficult in practice to lay

down any rules which, would furnish a just guide to limit the discretion of the court. The court must endeavor to work its own way through every case, upon a comprehensive survey of all the circumstances.

The circumstances entitled to most consideration in all cases of salvage are, the value of the property saved; the extent of the labor and services; and the degree of merit and gallantry in accomplishing the enterprise. The latter, in an especial manner, is looked to by the court with uncommon favor. Lord Stowell has spoken on this subject with his accustomed force and elegance. "The principles," says he, "on which the court of admiralty proceeds, lead to a liberal remuneration in salvage cases; for they look, not merely to the exact quantum of service performed in the case itself, but to the general interests of the navigation and commerce of the country, which are greatly protected by exertions of this nature. The fatigue, the anxiety, the determination to encounter danger, if necessary, the spirit of adventure, the skill and dexterity, which are acquired by the exercise of that spirit, all require to be taken into consideration. What enhances the pretensions of salvors most, is the actual danger which they have incurred. The value of human life is that which is, and ought to be, principally considered in the preservation of other men's property; and, if this is shown to have been hazarded, it is most highly estimated." The William Beckford, 3 C. Rob. Adm. 355. On the other hand, the value of the property saved must always form a very important ingredient, since that proportion would be a very inadequate compensation in cases of small value, which would be truly liberal in others of great value.

As the allowance of salvage necessarily rests very much in the discretion of the court, it is hardly possible, in many cases, that different courts, exercising independent judgment, should arrive at precisely the same conclusion. Each may exercise the most enlightened discretion; and yet, from the necessary differences of the human mind, they may differently adjust the salvage to the circumstances. On this account it has always been the disposition of the appellate courts of the United States, in all salvage cases, to discourage appeals, as mischievous and expensive to all parties. And, therefore, they generally adhere to the rate of salvage allowed in the court, from which the appeal is taken, unless the evidence clearly calls for a different proportion. The Sibyl, 4 Wheat. [17 U. S.] 98; Tyson v. Prior [Case No. 14,319]; The Dos Hermanos, 10 Wheat. [23 U. S.] 306. No judge has been more inclined to adhere to this doctrine than myself. Still, when the question is made, it becomes my duty to examine the case with all the just deference belonging to the judgment of others; but at the same time with some regard to the rights of the

---

[1] See the cases referred to in Abb. Shipp. (4th Am. Ed. 1829, by Story) p. 3, c. 10, pp. 39?, 3 S. note 1; Id. p. 400, note 1; Rowe v. The Brig [supra].

parties in respect to my own. The allowance of the district judge in this the present case, exceeded, in a small degree, one fifth of the whole property saved. It cannot certainly be pronounced an extravagant proportion; at the same time, with reference to the value of the property, and the duration and peril of the service, it must be admitted to be large. The time employed was less than two days; the weather was not boisterous; the peril to life, if it existed in any considerable degree, was not long, nor exceedingly critical; the season of the year was unfavorable, but the voyage was in a Sound full of ports or anchorages, where assistance might, in case of necessity, be procured, or a harbour made; the vessel was upset, but the principal cargo (logwood and mahogany) was buoyant; so that there was little danger of the wreck and loss of both, unless by some severe storm. And it may be added, that numerous vessels are perpetually passing through the same Sound; so that extraordinary hazards would have been, under common circumstances, accompanied by extraordinary means of assistance. A suggestion has been made, that the storm of the succeeding day, after the arrival at Edgartown, would have very probably occasioned a total loss of the vessel and cargo, if they had not then been in port. Admitting that to be true, still it cannot constitute a material ground, in a case like the present, for enhancing the salvage. Salvage is a compensation for the rescue of the property from present, pressing, impending perils; and not for the rescue of it from possible future perils. It is a compensation for labor and services, for activity and enterprise, for courage and gallantry actually exerted, and not for the possible exercise of them, which under other circumstances might have been requisite. It is allowed, because the property is saved; not, because it might have been otherwise lost upon future contingencies. Subsequent perils and storms may enter, as an ingredient, into the case, when they were foreseen, to show the promptitude of the assistance, and the activity and sound judgment with which the business was conducted; but they can scarcely avail for any other purpose. Ought the salvage to be diminished by a favorable state of the weather after the arrival in port? If not, why should it be increased by an unfavorable state of the weather? To introduce such ingredients into the estimate of salvage, which were neither foreseen, nor acted upon, would compel the court to deliver itself over to conjectures, resting on loose probabilities, the nature and extent of which could never be measured. It would be to go off of soundings; to desert the facts; and to be guided by speculations, always questionable, and sometimes deceptive.

After weighing all the circumstances, I have with great reluctance come to the conclusion, that the decree assigns too high a rate of salvage. No person can entertain a higher respect for the sound judgment and ability of my learned brother, the district judge, than myself. Nor should I incline upon slight differences of opinion to vary his decree. But a full review of all the facts has not enabled me to arrive at the conclusion, that, consistently with my duty, I ought to affirm the decree. In the case of The William Beckford, 3 C. Rob. Adm. 355, where the property was in great distress, and the circumstances more perilous than those of the present case, though somewhat resembling them, Lord Stowell deemed a salvage of £1,000, out of a property worth more than £17,000, to be an ample remuneration. I am not sure, that I should have arrived at a result so moderated and measured. But the decree of the district court, in the present case, has more than trebled the proportion, under circumstances, however, of greatly diminished value.

My opinion is, that eight hundred and fifty dollars, which is a little more than one seventh of the property saved, will be a liberal compensation, looking to the value of the property at hazard, and the nature of the services performed. Of this sum, I shall decree one hundred dollars to be paid to Bartemus Luce and the thirteen other persons, whose claims were brought forward by the supplemental libel, instead of the sum allowed them by the decree of the district court. The remaining sum is to be paid to the original libellants, belonging to the pilot boat Superior, and the sloop Hero; and these sums are to be apportioned and distributed among the salvors respectively, according to the distribution made by the decree of the district court. The costs of the district court are to be paid by the claimants; and the costs of this court are to be borne by the respective parties, who have incurred them. Decree altered accordingly.