FRED C. MERRILL *vs.* ALBERT O. FISHER.

Dukes County.    October 25, 1909. — February 23, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Ship.   Salvor and Salvage.   Lien,* Maritime, Laches.   *Abandonment.   Replevin.*

In an action of replevin by the owner of a sloop yacht to recover her from a cus-
todian representing her salvors, it was assumed, that two boys who had stolen
the yacht and were wrongfully in sole possession of her could abandon her in
peril on the high seas without hope of recovery and without the intention of
returning so as to make the yacht a derelict, to which the salvors could acquire
an exclusive right of possession against the owner until they were remunerated
for their services.

The lien of salvors who have taken possession of a vessel which is a derelict
upon the high seas and their right of exclusive possession until they have re-
ceived remuneration for their services, although generally enforceable only in a
court of admiralty, will be recognized in the courts of common law, and their
right of possession will be protected in defense to an action of replevin by the
owner of the vessel.

In an action of replevin by the owner of a sloop yacht to recover her from a cus-
todian representing her salvors, it was admitted that the yacht had been stolen
by two boys, who being alone on board had left her by means of her tender
when she had dragged her anchor in a gale until it had caught on a rock within
about sixty feet of a lee shore, and there was evidence warranting a finding that
the thieves wholly had abandoned the yacht and that she was a derelict at the
time the salvors boarded her, so that the salvors had the right of exclusive posses-
sion until they had been remunerated for their services, unless they had lost
their lien by their laches in failing to take steps to enforce it.   It appeared that
after the salvors had found the yacht upon the high seas they took her to a safe
harbor and placed her in the hands of the defendant as their agent, and there
was evidence that, under an arrangement made with the defendant by the
salvors and the owner, the defendant was to keep the yacht until the claim
of the salvors "was settled, satisfactorily."   There were some negotiations
about the claim and the salvors had hoped to reach a settlement without re-
course to legal proceedings.   Three months and twenty days after the saving
of the vessel, and when no legal proceedings had been instituted by the salvors
to enforce their lien, the owner brought this action of replevin.   *Held,* that,
even if the arrangement with the defendant must be construed to mean that the
vessel was to be kept by him only for such a time as reasonably would be required
for a settlement, it could not be ruled as matter of law that such a reasonable
time had expired; that therefore it could not be ruled that the lien of the salvors
had been lost by laches when the action of replevin was brought, and the
question whether there had been undue delay on the part of the salvors was
one of fact for the jury.

REPLEVIN for a sloop yacht called the Pocahontas.   Writ
dated June 30, 1908.

The defendant's answer was as follows :

" And now comes the defendant in the above-entitled cause, and for answer says that he did not take nor detain the goods of the plaintiff, to wit: one sloop, formerly called the Pocahontas, unlawfully, and without justifiable cause, as is alleged in the plaintiff's writ.

" And the defendant further answering says that on or about the tenth day of November, 1907, George Rogers and Lewis Rogers, both of West Tisbury, in said county of Dukes, and Edward H. Luce, of said Tisbury, found the said sloop, formerly called the Pocahontas, abandoned and in great peril on the high seas, to wit, in Vineyard Sound, and that they saved the said sloop and took her to a safe harbor and placed her and hauled her up safe from the peril of the seas, upon the ship ways of him the defendant, and made and appointed the defendant their agent and servant as keeper and custodian of said sloop.    That the said George Rogers, Lewis Rogers and Edward H. Luce have, and had at the date of the plaintiff's writ, a lien upon said sloop as salvors as aforesaid, and that the defendant held, and was entitled to hold, said sloop as agent and keeper for said salvors under said lien at the time said writ was served."

In the Superior Court the case was tried before *King*, J.   The undisputed facts were as follows:

" The Pocahontas was the property of Dr. Fred C. Merrill, of Wollaston ; said yacht was stolen from her moorings in Quincy Bay on the sixteenth day of October, 1907, by two boys, one named Croucher and the other McDonald.   These boys sailed said yacht around Cape Cod, being four days on the trip.   On the night of October 20 they anchored in Tarpaulin Cove, Vineyard Sound, because they had been warned that a storm was coming on.   The wind increased in the night and the yacht dragged across Vineyard Sound to Gray's Beach, so called, on the north shore of the island of Martha's Vineyard.   Here the anchor caught, holding the yacht about sixty feet from the beach, and the thieves went ashore in the yacht's tender."

The disputed facts are described or sufficiently referred to in the opinion.

On the evidence presented to him and without the making of any motion, the judge ordered a verdict for the plaintiff, and

further directed the jury to assess damages in favor of the plaintiff for the detention of the yacht. The defendant excepted.

The defendant thereupon submitted to the judge " the proposition that on the following questions there was, as matter of law, evidence for the consideration of the jury under proper instructions from the court:

" 1. Did a marine peril exist?

" 2. Were services voluntarily rendered by the alleged salvors?

" 3. Did such services if so rendered result in whole or in part in success?

" 4. Did the alleged salvors obtain the right to exclusive possession of the yacht Pocahontas?

" 5. If such exclusive possession was obtained by the alleged salvors on their claim of salvor's lien, was their right to exclusive possession lost by their laches? "

The judge refused to submit any of these questions to the jury; and the defendant alleged exceptions.

*G. F. Moulton*, for the defendant.

*J. A. O'Keefe*, for the plaintiff.

HAMMOND, J. Upon the undisputed facts the yacht was in maritime peril at the time she was boarded by the Rogers brothers and Luce, and their services were voluntary and successful. Hence it was a clear case of salvage service and the salvors had a lien upon the yacht for reasonable compensation. Indeed we do not understand the plaintiff to contend to the contrary.

Was the yacht derelict in the maritime sense of the word? Property is derelict within this sense " when it is abandoned without hope of recovery or without intention of returning." Ware, J., in *Elizabeth & Jane*, 1 Ware, 41, 43; or, as stated by Scott, J., in *The Aquila*, 1 Rob. Adm. 37, 40, " It is sufficient if there has been an abandonment at sea by the master and crew, without hope of recovery . . . a mere quitting of the ship for the purpose of procuring assistance from shore, or with an intention of returning to her again, is not an abandonment." See also *Cossman* v. *West*, 13 App. Cas. 160; *The King* v. *Two Casks of Tallow*, 3 Hagg. Adm. 294; *The Bee*, 1 Ware, 332; *Tyson* v. *Prior*, 1 Gall. 133; *The Boston*, 1 Sumn. 328; *The Emulous*,

1 Sumn. 207.  The intention is the intention at the time the
vessel is abandoned.  If at that time it is such as to constitute
an abandonment and salvors have taken possession, an intention
subsequently formed to return and resume charge is not mate-
rial.  See the cases cited in 24 Am. & Eng. Encyc. of Law,
(2d ed.) 1217, note 5.

Upon the question whether, when the thieves Croucher and
McDonald left the yacht, they abandoned her without hope and
with no intention to return, or simply left her for the purpose of
getting assistance to rescue her, the evidence is conflicting.  It
is unnecessary to repeat it in detail.  The evidence in support
of the contention that the yacht had not been wholly abandoned
by the thieves came principally from McDonald; and his testi-
mony, if believed, would sustain the contention of the plaintiff.
On the contrary George H. Rogers, one of the salvors, testified
that when the thieves came to his house they said they were
shipwrecked sailors and that they wanted "to get in and get
dry"; that in reply to questions from him after they had been
admitted they said they had left the yacht "on the rocks along
the beach somewhere; they did not know where, but she was on
the rocks and the sea was breaking over her and they thought
then she was on the bottom. . . . They said they had left her on
the beach full of water, as they supposed then, and that she was
bumping against the rocks."  He further testified that he said
to them "Do you want to go back and look for the boat?" and
that their reply was, "No, we have got all we want of it; we
have got all we want of the boat.  We are through with her.
We had a bad time last night and do not care to go back to her."
He further testified that after they had had breakfast they
"wanted to know how far it was to Vineyard Haven"; that he
told them as well as he could; and that in reply to a question
from him as to whether they were going back to the boat they
said, "No.  They did not want anything more of the boat.  All
they wanted was they would like to get a shotgun out of the
sloop."

In addition to this direct testimony as to what the thieves
said of the intention with which they left the yacht there is
much to be found in the undisputed facts tending to support the
theory that they left with no hope and no intention to return.

The wind was then blowing a gale from the northwest. Driven by the gale the yacht had drifted from Tarpaulin Cove, dragging her anchor miles across the sound, until it caught within about sixty feet of the lee shore, on the north side of Martha's Vineyard. McDonald testified that the anchor at first caught when about three hundred feet from the shore and held about an hour, after which the yacht swung around and struck a boulder and the anchor caught again, and that then they went ashore in the yacht's tender. They had no lawful interest in the yacht. They needed assistance to save her, and had not much, if any, money to pay for repairs. They were upon an island among a people intelligent and likely to be curious about the boat and its occupants. The circumstances of the disaster might lead to publicity, publicity to detection, and detection to imprisonment. Without alluding to other circumstances pointing in the same direction, it is sufficient to say that upon all the evidence the jury properly might have found that the thieves had wholly abandoned the yacht and that she was a derelict at the time the salvors boarded her.

If she was derelict, then the salvors had the right of exclusive possession. The law on this subject is well stated by Sir Barnes Peacock in giving the opinion of the Privy Council in *Cossman* v. *West*, 13 App. Cas. 160, 181, as follows: "In the case of salvors there is a distinction between a derelict and a vessel which, though in great danger, has not been abandoned by the master and crew. In the case of a derelict, the salvors who first take possession have not only a maritime lien on the ship for salvage services, but they have the entire and absolute possession and control of the vessel, and no one can interfere with them except in the case of manifest incompetence; but in an ordinary case of disaster, when the master remains in command he retains the possession of the ship, and it is his province to determine the amount of assistance that is necessary. . . . So unless a vessel is derelict the salvors have not the right as against the master to the exclusive possession of it, even though he should have left it temporarily, but they are bound on the master's returning and claiming charge of the vessel to give it up to him." And in the cause then before him he said: "The vessel being a derelict, the salvors had the exclusive possession

and control of it up to the time of the sale, and were not bound to give it up until they had been remunerated for the salvage services."

In the present case therefore there was evidence that the salvors were entitled to the exclusive possession until remunerated for their services. Indeed this does not seem to have been disputed by the thieves, and perhaps not at first by the plaintiff, the lawful owner of the yacht. And the lien, although generally enforceable only in a court of admiralty, will be recognized in the courts of common law and the right of possession arising therefrom will be there protected. *Hartfort* v. *Jones*, 1 Ld. Raym. 393. *Baker* v. *Hoag*, 7 N. Y. 555. *Studley* v. *Baker*, 2 Lowell, 205, 208.

The disagreement was simply as to the amount of the compensation to be paid to the salvors. After the thieves had left and the plaintiff had arrived upon the scene, it was agreed that the defendant, who at that time was in possession of the yacht as the agent of the salvors, should continue to keep the yacht. While there was some conflict in the evidence as to the precise terms of this arrangement made with the defendant by the consent of the salvors and the owner, there was evidence that he was to keep it until the claim of the salvors "was settled, satisfactorily." Even if this must be construed to mean that it was to be kept for only such time as would be reasonably required for a settlement, we do not think that it could be ruled as matter of law that as contended by the plaintiff the time had expired and that at the time this action of replevin was brought the lien of the salvors had been lost by laches, or by their failure to prosecute by legal proceedings. There had been some negotiations about the claims, and the salvors had hoped to reach a settlement without recourse to legal proceedings ; and under the somewhat peculiar circumstances we think that the question whether there had been undue delay on their part was a question of fact for the jury.

It follows that the orders directing a verdict for the plaintiff and that his damages be assessed, were wrong.

*Exceptions sustained.*