MENGEL BOX CO. *et al. v.* JOEST.

[90 South.   161.   No. 22030.]

1. SALVAGE.  *No lien at common law to salvor carrying right of exclusive possession of vessel, though derelict.*

There is no lien or charge given by the common law to the salvor of a vessel in marine peril against such vessel, which carries with it the right of exclusive possession of such vessel in the salvor for the purpose of enforcing such salvage claim, even though such vessel be a derelict.

2. SALVAGE.  *Under statute salvor has no exclusive possession unless vessel a derelict.*

Nor is there given to the salvor of a vessel in marine peril by our statute (chapter 120, Laws of 1908; Hemingway's Code, sections 7305 to 7314, inclusive) the right of exclusive possession of such vessel for the purpose of enforcing his salvage claim, unless such vessel be a derelict.

3. SALVAGE. *Under maritime laws and under statute salvor of derelict has exclusive right of possession to enforce salvage claim.* •

Under the maritime law, as well as by virtue of chapter 120, Laws of 1908 (Hemingway's Code, sections 7305 to 7314, inclusive), the salvor of a vessel which is a derelict is given the exclusive right of possession for the enforcement of his claim for salvage.

4. SALVAGE. *Statutory term "derelict" presumed used as defined by maritime law.*

It is to be assumed that the legislature used the term "derelict" in section 1, chapter 120, Laws of 1908, Hemingway's Code, section 7305, in its well-understood sense as defined by the maritime law.

5. SALVAGE. *"Derelict" defined.*

A "derelict" is not alone a vessel in marine peril; it is a vessel found upon the seas or other navigable waters forsaken and without any person in command; a vessel which has been abandoned by master and crew without hope of recovery; and the mere quitting of a vessel for the purpose of securing assistance from shore and with the intention of returning to her again is not such an abandonment as would cause a vessel to be a derelict in the sense of the maritime law and our statute.

6. SALVAGE. *Barge broken loose from moornings held not a derelict.*

In a case where a barge was broken loose from its moorings by an ice floe and was being carried down the Mississippi river, and the owner soon thereafter discovered that it had been so carried away, and immediately adopted every..reasonable means at hand to recover it, making the fact generally known to rivermen and asking that they be on the lookout for it, and the evidence shows that at the time it was tied up and towed in by another than the owner—the latter was on a government dredgeboat on the river below the barge in question with the searchlight of such dredgboat thrown across the river on the lookout for it—such barge, although it may have been in peril, was not a derelict, and therefore the person so taking possession of it is not entitled to hold the exclusive possession thereof as security for his salvage claim, for under our statute as well as under the maritime law only the salvor of a derelict has such security of exclusive possession for enforcing his claim.

7. ADMIRALTY. *Holding drifting barge not a derelict no invasion of admiralty jurisdiction of federal courts.*

To so hold under the facts in this case does not amount to an invasion of the jurisdiction of the admiralty courts of the United States, which under section 2, art. 3, of the Constitution of the United States, and 36 Stat. at Large 1091, 4 Fed. Stat. Ann. 1005 (U. S. Comp. St. section 991), enacted in pursuance thereof, are invested h exclusive admiralty jurisdiction, because this is not an action

directly to enforce an admiralty claim. It is a replevin suit involving alone the right of possession of the barge in question. It is true the admiralty law is taken into consideration, and under the particular facts in this case is determinative of the question of whether the person so recovering the barge is entitled to the possession of it, but it is only as a side light that the admiralty law comes into play.

APPEAL from circuit court of Bolivar county.

HON. W. A. ALCORN, JR., Judge.

Replevin by the Mengel Box Company against P. H. Joest. Judgment for defendant against plaintiff and the sureties on its replevin bond, and plaintiff appeals. Reversed and rendered.

The appellant, Mengel Box Company, brought replevin against the appellee, P. H. Joest, in the circuit court of Bolivar county for a steel barge of the value of twelve thousand dollars. The appellant gave bond under the statute in the sum of twenty-five thousand dollars, double the value of the barge, and took possession of the same. After all the testimony for both the appellant and the appellee was in, the court directed a verdict for the appellee, upon which verdict the court entered a judgment in favor of the appellee adjudging that the appellant restore the barge in question to the appellee, and upon failure so to do that appellee recover of the appellant the value of the barge, twelve thousand dollars, and the costs of the suit. From that judgment the appellant prosecutes this appeal.

In January, 1918, the appellant, Mengel Box Company, had tied up at Hickman, Ky., one of its places of business, on the Mississippi river, a lot of barges, derricks, and boats used in connection with its business. An unusual ice floe came down the Mississippi river at that time which came in contact with a lot of these barges and boats and broke them loose from their moorings. Seven barges, two log derricks, and one steamboat belonging to the appellant in this manner were swept away from their moorings and carried down the Mississippi river. Among the barges was the one in question in this case. It was one hundred sixty feet long, thirty-four feet wide, painted red, and had mark-

ed on it at each end and on both sides, "Mengel Box Company, No. 4," and in addition the name "Mengel Box Company" was cut into the steel heads at each end of the barge. The evidence in the case shows without conflict that as soon as the barges were carried away by the ice floe in the manner stated their loss was discovered by the appellant, which immediately set in motion every reasonable means to recover them. It was published in the newspapers below Hickman and was generally known by the rivermen, including appellee, that these barges had been carried away from their moorings and were floating down the river. The manager of the appellant, Walker, went to Greenville and procured the services of the government steamboat Arthur Hider to assist in recovering these barges. The steamer Arthur Hider was a steel hull boat capable of going through the ice. Appellant arranged with Capt. Stanfield on board the government steamer Wynoaka at Barfield, Ark., to catch three of the barges which appellant was informed were approaching that point on the river. The other six barges were the same size as the one involved in this case. Capt. Stanfield succeeded in arresting and towing in the three barges at Barfield. One of the barges was tied up a few miles above Greenville by one Ascher. Walker, the manager of appellant, showed by his evidence that from the time these barges broke loose from their moorings until they were all captured and returned he was informed as to their whereabouts; that he knew when the barges passed Kentucky Bend, Caruthersville, Wardlaw Pocket, Memphis, and Helena. The evidence showed without conflict that all seven of the barges were captured before they reached Greenville, and the highest amount paid for the capture and towing in of any of them was fifty dollars. It was also shown by the evidence of other rivermen that the usual charge for such service was from twenty-five to fifty dollars. The evidence for appellant was to the effect that the barge in question was of steel construction with airtight compartments, screw hatches, and would "float just as well upside down as straight;" that it was nonsinkable.

The appellee, Joest, was engaged in the mercantile business on the Mississippi river as Rosedale and handled timber and fish and engaged in the motor boat business.  He saw this steel barge No. 4 as it was passing Rosedale, and he and some of his friends about his place of business, with ropes and boats that belonged to him, went out and tied up to this barge and towed it in.  At the time this occurred Walker, the manager of the appellant company, was at Greenville on the government steamer Arthur Hider with a searchlight thrown across the Mississippi river on the lookout for this very barge.  Later he heard that it had been towed in by the appellee.  Appellee's testimony tended to show that, notwithstanding this barge was constructed in the manner shown by the evidence of Walker, it was nevertheless in danger of being lost when he towed it in, and that it was sinkable, and, if it had been tipped over, it would have sunk.

The appellant offered in evidence the plans and specifications upon which the barge was constructed for the purpose of showing that it would be impossible for it to sink. The court ruled this out.

*Somerville & Somerville* and *Humphreys, Crawford & Middleton,* for appellant.

The question of possession and the right of possession of salved property is settled, and is in favor of the appellant in this case. .For the sake of this present argument it might be admitted that Mr. Joest is entitled to compensation, and to salvage, and also entitled to sue out a libel in the Federal district court of Kentucky against the barge at this time, the record showing it to be there; or that he could sue the Mengel Box Co. in the said court; but he is not entitled to the possession of the barge.  Ruling Case Law (24 R. C. L. 537), sec. 19; 35 Cyc. 773, 11 Fed. 749; Aquila, I. C. Rob. 41.  *Rowe* v. *Brig,* 1 Mason 373; The Island City, 1 Black 128; *Island City Cromwell* v. *The Island City,* 17 L. C. P. Co. Ed., page 70.

In the language of the streets it has often been said that there is no such thing as "Salvage above Canal Street," meaning that north of New Orleans there is no such thing as a marine peril and there can hardly be such a thing as derelict property. In the case at bar we certainly think that every reason can be assigned for this property not being derelict; from which we adduce that the possession and right of possession remained in the plaintiff, Mengel Box Company. The first question which presents itself to our reason in considering the question of a derelict is the possibility of loss. The American Encyclopaedic Dictionary defines derelict as "lost, forsaken, deserted, abandoned." Now how on earth could this barge have been lost. The record shows that it was floating down the Mississippi River, it could not have sunk, nor flown, and therefore it could not have been said to be either lost or subject to loss. There is no backwater in the Mississippi River, no tide and nothing else but a steady flow and the barge must have gone on south unless the ice became so thick as to temporarily hold it. The record shows that the ice was much thinner at Greenville than at Rosedale and that the barge could and would have been taken in charge at Greenville. Col. Walker states repeatedly that he had never abandoned the barge. Viewed from the standpoint of the defendant it cannot be contended that the barge was a derelict.

Just there we digress to call the attention of the court to the errors committed by the lower court in refusing to permit us to show that we were preparing to take charge of the barge. Again as to the possibility of the barge being lost or sunk. Col. Walker had testified that the barge could not be sunk, and the defendant had testified that this was error and that any barge could be sunk. In rebuttal we therefore offered, the plans and specifications to show the jury the construction of the barge, and so that the jury could judge for themselves as to whether or not the barge could have been sunk. We think it was manifest error to refuse the admission of this testimony. All of this testi-

mony tended to show whether or not the barge was derelict and would have been very material for the consideration of the jury, had it been a jury case. We admit that this is not of great consequence on this appeal, because, the peremptory instruction having been given we are entitled to have the court review the entire record most favorably to us.

The defendant not entitled to salvage. We next come to a consideration of the question as to whether or not the defendant is entitled to any salvage whatever. The preceding discussion, we think has shown that even if salvage were allowed that the defendant is not entitled to possession, and the action of replevin would be resolved against the defendant. Looking more deeply into the record and the marine law however we contend that this is not a case of salvage at all because there was no marine peril. This question is very tersely put in 24 R. C. L. pp. 521-525.

The latest authority on this subject now before us is Ruling Case Law, which states the proposition thus: "In order to found a claim for salvage, it is absolutely essential that the ship should be in imminent danger of being lost, and should, by the service be saved from such danger, but, the danger, being real and imminent, it is not necessary, in order to make out a salvage service, that escape by other means should be impossible." (24 R. C. L. page 525, sec. 4.) The reason for this statement of the law seems very plain to us; salvage is allowed not so much as regards the value of the services rendered, but is allowed as of the value of the property saved. (108 U. S. 352; 27 L. C. P. Ed. 751.)

We submit that upon a fair consideration of the testimony in the case there is nothing showing a marine peril, or that the defendant even though there was any danger of the loss or destruction of the barge; which being the case, we cannot see that this is a case for salvage in any respect.

State court has no jurisdiction of salvage suit. The judicial power relating to maritime questions, and covering

all questions of salvage, is vested exclusively in the Federal District Court. State courts have no jurisdiction over such controversies, and state statutes conferring such jursdiction are unconstitutional and unenforceable, when they seek to encroach upon the jurisdiction of the federal court. *The Belfast* v. *Boon,* 19 L. Ed. 266, 7 Wall, 624; *The Genesee Chief* v. *Fitzhugh et al.,* 13 L. Ed. 1058; 12 How. 441; *Martin* v. *Hunter's Lessee,* 4 L. Ed. 97; 1 Wheat, 303. This also extends to and includes the *Mississippi River Retz. et al.* v. *Bull et al.,* 13 L. Ed. 1068; 12 How. 464.

"It could hardly be doubted that a barge is a ship or vessel," within the meaning of the maritime law, however the precise question has been passed upon in the affirmative several times. We cite to this effect *Cope* v. *Dry Dock Co.,* 119 U. S. 625, 30 L. Ed. 500; The Alabama, 19 Fed. 544: We also cite on this question *Stewart* v. *Potomac Ferry Co.,* 12 Fed. 296; *Rood* v. *Heartt,* 88 U. S. 558, 22 L. Ed, 654; *Ex. Parte Easton,* 24 L. Ed, 372; 95 U. S. 68; *The Mayflower* v. *The Sabine,* 101 U. S. 384, 25 L. Ed. 982; *Housman* v. *The Cargo of the Schooner N. Carolina,* 15 Peters, 40, 10 L. Ed, 652; and the *Mayflower* v. *The Sabine* (*supra.*)

The federal court having exclusive jurisdiction of the question of salvage in the first place, and salvage being a doctrine unknown to the common law we see nothing for the court of common law to do but direct a verdict for the plaintiff in the case, leaving the defendant to recover his deserts in a proper forum, when and how, he may seek it. This rule of practice is well recognized in the case of *Hudson* v. *Whitmire,* 77 Fed. 846. See also *Fritch* v. *Crowell,* 5 Barb. N. Y. 209.

The court will be greatly interested however, aside from the federal decisions, to look at our state statute in determining the question of salvage *vel non.* We here call the attention of the court to our state statute bearing on the question of salvage. Sec. 7305, code 1917, sec. 1, ch. 120, Acts 1908.

We again see that it is recognized by our legislature that in order for a party to recover salvage that the thing salved must have been lost, derelict as put by our statute. Our state statute has never been before this court before, so far as the reports show, but we feel certain that our statute will be construed by this court in practically the same manner that the U. S. Supreme court has construed the federal statutes. This being the case there can hardly be a doubt but that the court will find that the barge in question was not derelict, nor the subject of salvage.

We therefore respectfully submit: 1. That the defendant could not have any right to the possession of the barge, it not being derelict. 2. That if this is not resolved positively in favor of the plaintiff it was at least entitled to go to the jury on this question. 3. That the defendant was not entitled to any salvage the barge being in no danger or peril, never having been abandoned and the defendant knowing all the time that the barge was not in danger and that the owner was coming for it. 4. That this question should have been submitted to the jury if not determined finally in favor of the plaintiff. 5. That the court had no jurisdiction to do otherwise than grant the property to the rightful owner, and leave the defendant to seek his remedy for salvage or other like claim in the Federal District Court.

*Sillers, Clark & Sillers* and *Green & Green,* for appellee.

Appellant has endeavored to inject into this case questions of the jurisdiction of the circuit court, and a denial of jurisdiction of the circuit court in this replevin suit, because the jurisdiction of salvage claims is claimed to be exclusively in the district court of the United States. This is very interesting, if it were sound, which it is not, but the answer to this proposition is, that the plaintiff, appellant, brought this action of replevin in the state court, and undertook to prove what was the usual customary charge for the services rendered in rescuing this barge,

and took the property out of the possession of the circuit court and its custody by the execution bond, by which it agreed to restore the property to the jurisdiction of the court, or pay the value thereof, if defendant obtained judgment: Election of remedies; *Warringer* v. *Fant*, 74 Southern (Miss.) 822, holds ordinarily a party's choice of one of several inconsistent remedies estops him from later resorting to another remedy: "A creditor may elect to either proceed individually by attachment proceedings against his debtor, or join other creditors in seeking appointment of a receiver, and where he joined others in securing appointment of a receiver, his election to pursue that remedy estopped him from later instituting individual attachment proceedings against the debtor." The court there quotes, with approval; Election is simply what its name imports, a choice shown by an overt act between two inconsistent rights, either of which may be asserted at the will of the chooser alone." *Bierce* v. *Hutchins*, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828. The rule is applied in *Johnson* v. *Chi. & Pacific Elevator Co.*, 119 U. S. 388, 30 L. Ed. 447; 4 Fed. Statutes Ann., 2 Ed. 839; *Johnson* v. *Chi. & Pacific Elevator Company, supra; Keithley* v. *Northern Pac. S. S. Co.*, 232 Fed. 257; *Swayne* v. *Barch*, 226 Fed. 590; *Johnson* v. *Chi. & Pacific Elevator Company, supra;* is cited and approved in *Rounds* v. *Cloverport Foundry & M. Co.*, 237 U. S. 307, 59 L. Ed. 968, upholding an action brought in the state court for materials furnished in the construction of a vessel. *Kapp* v. *McCaffrey*, 177 U. S. 924-5, 44 L. Ed. 643; *Kalb-Gilbert Lumber Company* v. *Cram*, 57 Wash. 554, 107 Pac. 382; *McClaskey* v. *Barr*, 79 Fed. 412-417, 35 Cyc. 778.

Derelict. Counsel cite divers cases as to whether this barge was a derelict. The cases cited, in appellant's brief, show that if necessary to show that this barge was a derelict, which if it is not then, it falls within the definitions contained, in this. Sir Leoline Jenkins defines derelicts to be, "boats or other vessels forsaken or found on the seas without any person in them." . . . In *Rowe* v. *Brig*,

1 Mason 373, Judge STORY said that to constitute a derelict, in the sense of the maritime law, it is sufficient that the thing is found deserted or abandoned upon the seas, whether it arose from accident or necessity or voluntary derelictions.  18 C. J. 787, defines "derelict" among other definitions, "boats or other vessels forsaken or found on the seas without any person in them; in danger of total loss, danger in a high degree, in consequence of abandonment," 35 Cyc. 721; *The Burlington,* 73 Fed. 258; *Merrill* v. *Fisher,* 204 Mass. 600-3; *The B. C. Terry,* 9 Fed. 920; Hughes on Admiralty (2 Fed. Ed. 1920), p. 134. ·Replevin at Law proper remedy, *Merrill* v. *Fisher*, 204 Mass. 600, *supra,* is directly in point, 1 C. J. 1254; 1 C. J. 1253; 1 C. J. 1253.

There is no dispute but that appellee was entitled to some compensation for rescuing the barge.  Appellant testifies that the customary charge for rescuing barges was from twenty-five dollars to fifty dollars.  The testimony for appellee shows that the actual expense was three hundred and sixty dollars and the peril encountered and suffering from cold, and the dangers of the rescue were elements of damage in addition.

It being admitted by appellant that some compensation was due appellee, then appellant could not take the vessel out of the appellee's possession by a suit in replevin without paying the amount due, and this would have to be tendered before an action of replevin would lie to take the property out of appellee's possession. *Wolfe* v. *Crawford,* 54 Miss. 514; *Railroad Company* v. *George,* 82 Miss. 727; *Strauss* v. *Baley,* 58 Miss. 131; Act of 1908, sec. 7305 et seq., Hemingway's Code.

The appellant, in the trial of this case, was so obsessed with the idea that jurisdiction was solely vested in the United States court of admiralty, that he attacked the act of 1908, being section 7305 of Hemingway's Code as creating a jurisdiction in the state court contrary to the exclusive jurisdiction of admiralty of maritime liens.

It is to be noted that section 7305 does not create a lien, but merely provides that whenever any person shall desire to claim compensation for any salvage service rendered by him, that he shall have a cause of action in the state court. Appellee was not put to the necessity of claiming the operation of this statute, but both under this statute and the common law he was entitled to recover for salvage service, as shown by the precedent authority, and that this salvage service was available to him as a claim against the owner of the vessel when the owner sought to take the vessel out of the possession of the salvor. There was no hint in the record, except in appellant's motion for a new trial, touching section 7305, Hemingway's Code, and, as stated, it does not appear from the record that any claim was made by appellee under this state statute on the trial.

If it had been, the authorities, *supra,* show that he would have the right to propound, and have enforced in the state court, in a suit in replevin, the claim for compensation for the service rendered. As stated, *Merrill* v. *Fisher,* 204 Mass. 600, *supra,* and other authorities, cited *supra,* show this to be the rule.

Appellee was entitled to peremptory instruction. Appellee had saved this vessel from this ice floe, and it was through his service that the vessel was rescued from the ice pack or floe. He had the possession of the vessel lawfully, and it was in the possession of his keeper, and had been so for ten days before appellant undertook to take it out of his possession, not lawfully, by paying the amount of the charges, due but forcibly by seizing by a suit in replevin in the state court.

Therefore, when plaintiff brought this suit in replevin, he could not maintain his suit because he had not paid, or offered to pay the charges existent thereon, and the lien therefore would have been lost to appellee if he had been dispossessed of the barge. Under these circumstances plaintiff was not entitled to recover, and a peremptory instruction for appellant was properly refused. Appellee was entitled to retain possession of the vessel, and the per-

emptory instruction should have been given for the defendant, and it was properly given. Where a party, in order to present to the jury his legal right by instruction, fails to do so, he cannot complain.

Under section 577, Hemingway's Code, the Judge is prohibited from giving instructions not requested. *Dixon* v. *State,* 64 So. 468, holds: "(2) No instruction was asked by either the state or defendant requesting the court to define the crime of murder, and therefore under section 793 of the Code, it was without power to so instruct them; consequently it did not err in not so doing, for error cannot be predicated upon the failure of the court to do a thing which it is expressly forbidden by the statute to do." "(3) If the instructions granted at the request of appellant are erroneous, he is without just cause of complaint thereat for the reason that the court simply did what he requested it to do. *Concensus tollit errorem.*" This rule is approved in *Lindsey Wagon Co.* v. *Nix,* 67 So. (Miss.) 459; and in *Mobile & Ohio Railroad Co.* v. *Campbell,* 75 So. (Miss.) 560.

No other judgment could have been rendered on the evidence than a verdict for the appellee, and under the case, as presented by this record, and under the instructions of the court the jury could not do otherwise than render a general verdict for the appellee, and under that general verdict there was no judgment that could be rendered except the judgment for the return of the vessel to the appellee, or, in compliance with the condition of the appellant's bond, that he should pay the value thereof which was assessed by the sheriff about which there was no dispute.

For these reasons the judgment should be affirmed.

ANDERSON, J., delivered the opinion of the court.

(After stating the facts as above). The appellee refused to deliver the barge to the appellant because the latter declined to pay the salvage charges demanded by him amount-

ing to three hundred and sixty dollars. Appellee's contention is that he has a right to the possession of the barge as security for his salvage charges which he claims are reasonable; that under the law he has a lien or charge against the barge for his services and expenses in bringing it in from the river and tying it up in a place of safety, and for the purpose of enforcing this lien he has the right under the law to the possession of the vessel.

There is no such lien or charge given by the common law carrying with it the right of possession in the salvor for its enforcement; nor is there under our statute (chapter 120, Laws of 1908; Hemingway's Code, sections 7305 to 7314, inclusive), unless the vessel saved be a derelict, for in section 1 of the statute (Hemingway's Code, section 7305) the right of the salvor to compensation and possession for its enforcement is expressly limited to derelicts, and that is also true of the maritime law. But under our statute as well as the maritime law, undoubtedly, the salvor of a derelict vessel has a lien or charge against such vessel for his services, and the right of exclusive possession for its enforcement. It is to be presumed that the legislature used the term "derelict" in the statute in its well-understood sense as defined in admiralty law. Therefore either under our statute or the maritime law the controlling question in this case is whether at the time appellee came into possession of the barge involved such barge was a derelict. In view of the conclusion reached by the court, it becomes unnecessary to decide, as will develop later in this opinion, whether chapter 120, Laws of 1908 (Hemingway's Code, sections 7305 to 7314, inclusive), is violative of section 2, art. 3, Constitution of the United States, which provides, among other things, that the judicial power of the federal government shall extend "to all cases of admiralty and maritime jurisdiction."

A derelict is a vessel forsaken, found upon the seas or other navigable waters without any person in command; a vessel that has been abandoned by master and crew, without hope of recovery. A mere quitting of the vessel

for the purpose of securing assistance from shore and with the intention of returning to her again is not such an abandonment as would cause the vessel to be a derelict in the sense of the maritime law. If the vessel is found deserted or abandoned whether from accident or necessity, or voluntarily, it is a derelict. It is an abandonment by master and crew without hope of recovery, not a temporary abandonment. *The Hyderabad* (D. C.) 11 Fed. 749, and 24 R. C. L. 537.

In the case of *The Island City,* 1 Black, 128, 17 L. Ed. 70, the supreme court of the United States held that to constitute a vessel a derelict the abandonment must have been final without any hope of recovery or intention of returning; that, if the crew left the vessel temporarily with the intention of returning after obtaining assistance, it would not be such an abandonment as to cause the vessel to be a derelict. To the same effect see *Merrill* v. *Fisher,* 204 Mass. 600, 91 N. E. 132, 134 Am. St. Rep. 706, 17 Ann Cas. 937. The fact alone that the vessel is in marine peril, and that the master and crew are absent, does not constitute a derelict.

Under the evidence in this case from the very time this barge was driven from its moorings at Hickman until it was recovered, although it had no crew on board, the appellant knew it was floating down the Mississippi river and kept up with it, knew from reports about where it was at different times, and had used and was using at the time it was brought in by the appellee every means in its power to recover it. Six barges exactly like it which were swept from their moorings at the same time were all recovered. There was no abandonment of any of them by the appellant. On the contrary, from the beginning until all of them had been recovered the appellant was hotfoot after them; and at the very time the appellee secured the barge in question the manager of the appellant company was at Greenville on a government boat with its searchlight thrown out across the river keeping a constant watch for this very barge. We conclude, therefore, that the barge in

question, under the maritime law as well as under our statute, was not a derelict at the time appellee acquired possession of it.

Under the maritime law, as well as under the express provision of our statute, it is clear that only the salvor of a derelict has the right of exclusive possession for the purpose of enforcing his claim for salvage, and that this remedy is not given to the salvor of a vessel on the ground alone that it was in marine peril when saved. 24 R. C. L. 537; 35 Cyc. 773. Therefore appellee was not entitled to the possession of the barge as against appellant.

To so hold under the facts of this case is not invading the jurisdiction of the admiralty courts, which under section 2, art. 3 of the Constitution, and 36 Stat. L. 1091, 4 Fed. Stat. Ann. 1005 (U. S. Comp. St. section 991), enacted in pursuance thereof is invested in the district courts of the United States and is exclusive. This is a replevin suit involving alone the right to the possession of the barge in question. The subject-matter of the suit is not one of admiralty jurisdiction. This identical question was involved in *Merrill* v. *Fisher, supra,* which was an action of replevin for a yacht or sloop in which the defendant undertook to justify his right to possession by showing that the vessel was captured by him as a derelict, and therefore he was entitled to hold possession of it to enforce a lien for his services enforceable only in a court of admiralty. The court held that the courts of common law would not enforce the lien, but would recognize such lien and the right of possession arising therefrom, and would protect the lien to the extent of leaving the vessel in possession of the defendant. We think the reasoning of the case is sound, and that the principle referred to would not in the least trench upon the maritime jurisdiction of the admiralty courts.

This is not a direct proceeding by either of the parties to enforce an admiralty claim. The maritime law is only a sidelight which happens under the facts of the case to be determinative of the right of possession.

Appellee is left to his remedy for any salvage claim he may have, either by a proceeding against the barge in the proper admiralty court or a suit *in personam* in a court of common law.

*Reversed, and judgment here for appellant.*