IsiDOR Moss *vs.* MAXWELL COPELOF & another.

Suffolk. November 20, 1918. — January 2, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Evidence,* Presumptions and burden of proof. *Contract,* Validity. *Bills and Notes. Corporation,* Officers, Directors.

Where in a bill of exceptions in an action of contract it was stated as a material fact, that the plaintiff was elected president of a Massachusetts business corporation, it was taken, in the absence of any statement to the contrary, that the plaintiff was elected as such president under St. 1903, c. 437, § 18, and therefore that he was elected for the term of one year.

In an action of contract on certain promissory notes the defence was set up that the notes were void because given in pursuance of an unlawful agreement. It appeared that the notes were given by the two defendants to the plaintiff in pursuance of a contract in writing between the three, that the three were directors of a business corporation, of which they owned a majority of the stock, that the plaintiff was the president of the corporation and received from the corporation a salary of $150 a week either for his services as president or otherwise, that by the contract the plaintiff agreed to terminate his employment by the corporation on a day named, which was thirteen days from the date of the contract, and it was provided that "Upon said termination [the plaintiff] shall be credited with an amount equivalent to one month's salary, namely: Six hundred (600) dollars, which shall be applied on account of his indebtedness to said [corporation] for unpaid stock subscription." This contract was not made nor authorized at a meeting of the directors and was not submitted to the stockholders at a meeting or otherwise. It could have been found that nothing could be due to the plaintiff at the time that he was to terminate his employment. The presiding judge ordered a verdict for the plaintiff. *Held,* that the ordering of the verdict was wrong and that the case should have been submitted to the jury, who could have found that the contract between the parties was to pay the plaintiff $600 from the funds of the corporation, when nothing was due to him, and to apply this amount on account of his indebtedness "for unpaid stock sub-

scription," which would make the contract unlawful and void and in violation of St. 1903, c. 437, § 14.

No action can be maintained between the parties to a promissory note which was given pursuant to the provisions of an unlawful contract.

CONTRACT on three promissory notes, signed by the defendants as makers and payable to the plaintiff, each for $40, dated respectively July 21, July 28 and August 4, 1917, and payable respectively on January 21, January 28 and February 4, 1918. Writ in the Municipal Court of the City of Boston dated February 8, 1918.

The defendants' answer, besides other matters, alleged "that, if the plaintiff offers evidence tending to show that the defendants made the notes set forth in the plaintiff's declaration, then the defendants say that said notes were made in pursuance of an illegal agreement and that said notes are therefore null and void."

On removal to the Superior Court the case was tried before *King*, J. The evidence is described in the opinion. The agreement in writing, there referred to and quoted in part, was in full as follows:

"Agreement entered into this nineteenth day of December, A. D. 1916, by and between Maxwell Copelof and Morris M. Roud, both of Boston, Massachusetts, (parties of the first part), and Isidor Moss of Brookline, Massachusetts, (party of the second part) Witnesseth:

"Whereas said parties at the present time are officers and stockholders of the M. & C. Skirt Company, a Massachusetts corporation, and

"Whereas said parties desire to leave the management and control of said corporation in the hands of the parties of the first part.

"Now therefore the said parties hereto agree as follows:

"First: Said party of the second part is to terminate his employment with said M. & C. Skirt Company on January 1, 1917.

"Second: Upon said termination said party of the second part shall be credited with an amount equivalent to one month's salary, namely: Six hundred (600) dollars, which shall be applied on account of his indebtedness to said M. & C. Skirt Company for unpaid stock subscription.

"Third: Said parties of the first part will pay said party of the second part on Saturday of each week for a period of six months beginning January 1, 1917, the sum of One hundred and twenty-five (125) dollars.

"Fourth: Beginning with July 1, 1917, said parties of the first part will advance to said party of the second part for a period of six months from said date the sum of One hundred and twenty-five (125) dollars each week, payable Saturday, and for said advances they shall have a lien either upon the dividends declared on the present stockholders of the said party of the second part in said M. & C. Skirt Company, or upon the stock itself, if the dividends declared shall be insufficient to re-pay such advances.

"Fifth: During the year 1917 said parties of the first part agree not to increase their present salaries, and during said year, and thereafter not to do any act or thing to benefit their stockholdings or derive any benefit therefrom at the expense of the holdings of said party of the second part, without first giving said party of the second part an opportunity to share in said benefits.

"Sixth: Said parties of the first part shall have the privilege in their discretion, if they so desire, to do, to cause said M. & C. Skirt Company to make said advances described in said paragraph four upon the terms therein stated.

"Seventh: Except as stipulated in said sixth paragraph, the agreements herein contained shall be binding upon and be for the benefit only of the parties herein named.

"In witness whereof said parties have signed their names to this agreement in triplicate this day and year first above written.

Morris M. Roud

Isidor Moss

Maxwell Copelof."

At the close of the evidence the judge, at the request of the plaintiff, ordered the jury to return a verdict for the plaintiff for the amount of the notes and interest. The jury accordingly found for the plaintiff in the sum of $121.69; and the defendants alleged exceptions.

*H. Bergson,* for the defendants, submitted a brief.

*P. Rubenstein,* for the plaintiff.

LORING, J.  This is an action on three notes each signed by the defendants. They admitted the execution of the notes and set up (*inter alia*) the defence of illegality. The presiding judge directed the jury to return a verdict for the plaintiff and the case is here on an exception taken to that ruling.

The evidence was in substance as follows: The notes were made

and delivered pursuant to a written agreement between the plaintiff and the defendants dated December 19, 1916. The plaintiff and the defendants (there are two of them) were the directors of the M. & C. Skirt Company, a Massachusetts corporation, and they owned a majority of the stock of that corporation. In addition the plaintiff was the president of the company. There was evidence "that there were quite a few other stockholders." The plaintiff testified "that he was employed by the corporation and received a salary of $150 per week;" and "that some time in the fall of 1916 he had some difference of opinion with the defendants about his remaining in active connection with the corporation . . . and that the plaintiff and the defendants discussed the question of having the plaintiff sever his connection with the company, and that as a result of the discussion the parties entered into" the written agreement of December 19, 1916. This agreement provided (1) that the plaintiff was '"to terminate his employment" on January 1, 1917, (2) that on terminating his employment the plaintiff was to "be credited with an amount equivalent to one month's salary, namely: Six hundred (600) dollars, which shall be applied on account of his indebtedness to said M. & C. Skirt Company for unpaid stock subscription". (3) that the defendants would pay him $125 a week for the six months next after January 1, 1917, (4) that during the six months beginning July 1, 1917, the defendants would advance to him $125 a week to be secured by the plaintiff's stock in the corporation, (5) that during the year 1917 the defendants would not "increase their present salaries, and during said year, and thereafter not to do any act or thing to benefit their stockholdings or derive any benefit therefrom at the expense of the holdings of said party of the second part, without first giving said party of the second part an opportunity to share in said benefits," and (6) the defendants should "have the privilege in their discretion, if they so desire, to do, to cause said M. & C. Skirt Company to make said advances described in said paragraph four upon the terms therein stated."

The plaintiff testified that when the time came for the advances to be made he agreed to take $45 a week in cash and $80 in two notes of $40 each signed by the defendants one note to be payable in six months and the other in a year. The first two six months' notes so given were paid when due. The notes sued on were the

third, fourth and fifth six months' notes given pursuant to the subsequent modification (stated above) of the fourth clause of the agreement of December, 1916. When the time came for the delivery of the sixth lot of two notes there was a dispute as to the collateral to be given by the plaintiff. Thereupon the defendants refused to make further advances. They also refused to pay the three notes here in question and this action was brought.

The plaintiff's main answer to the defence of illegality is that by the true construction of article 1 of the contract of December 19 the $600 there specified was to be paid to the plaintiff by the defendants and by him applied in payment of his unpaid subscription to the capital stock of the corporation. We cannot accede to that contention. The provision made by the article is that the plaintiff "shall be credited" with $600 not that he shall be paid $600. That means "credited" by the corporation.

It must be taken that the plaintiff was elected president of the corporation under St. 1903, c. 437, § 18. It follows that when elected he was elected for the period of one year. But it did not appear when he was elected and so it did not appear when the period of one year (for which he was elected) began to run. For all that appeared his election as president may have taken place December 20, 1915, and consequently there may have been but one day of his unexpired term left when the agreement of December 19, 1916, was made. It did not appear that the $150 per week which the plaintiff testified was the "salary" he was receiving from the corporation was paid to him as president. The plaintiff in his testimony went no further than to state that he "received a salary, of $150 per week." Doubtless the jury could have found on this evidence that this salary of $150 per week was received by him for his services as president. But we are not concerned with that. What we are concerned with is that on the evidence the jury were not bound to find that the plaintiff was entitled to receive anything from the corporation on January 1, 1917. If it be assumed that, being employed by the week, he could not be discharged without a week's notice and in the absence of such a notice without payment of a week's salary (*Frati* v. *Jannini*, 226 Mass. 430), he had more than a week's notice; for the contract was made on December 19, 1916, and he was to "terminate his employment" on January 1, 1917.

Putting at the highest the case made out by the plaintiff as matter of law, the notes sued on were given pursuant to a contract by which the plaintiff and the defendants (being all the directors of the corporation) agreed among themselves that the plaintiff should be paid $600 out of the funds of the corporation when the jury were warranted in finding that nothing was due to him. We have said that the plaintiff and the defendants agreed among themselves because there is no pretence that this agreement was made at a meeting of the directors and it affirmatively appeared that it was not submitted to a meeting of the stockholders nor indeed to the stockholders outside of a stockholders' meeting. This result is not affected by the plaintiff's testimony "that some time in the fall of 1916 he had some difference of opinion with the defendants about his remaining in active connection with the corporation." In the first place the jury were not bound to believe that testimony. But, if that testimony is to be taken to be true, it does not as matter of law require a finding that the agreement to pay the plaintiff $600 when nothing was due him for his services was an honest agreement. It may be that this testimony would have warranted a finding that the agreement was an honest one. But that is not of consequence. What is of consequence is that the jury were warranted in finding that this agreement was a dishonest one in spite of this testimony.

The payment of $600 out of the funds of the corporation when nothing was due to the plaintiff (if the jury found that to be the fact) would have been a fraud upon the stockholders and the agreement that the $600 should "be applied on account of his indebtedness . . . for unpaid stock subscriptions" would have been in violation of St. 1903, c. 437, § 14. If so, the whole contract would have been an illegal one. See, for example, *Palmbaum* v. *Magulsky*, 217 Mass. 306. It follows that the notes sued on given pursuant to its provisions would have been illegal also and this is a defence which can be set up in an action between the parties to the notes.

We have not found it necessary to consider the true construction of the sixth clause of the agreement, since we are of opinion (for the reasons stated) that the jury were warranted in finding that the agreement was an illegal one quite apart from that provision of the contract.

*Exceptions sustained.*