ISIDOR MOSS *vs.* MAXWELL COPELOF & another.

Suffolk.   January 14, 1920. — February 28, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CARROLL, & JENNEY, JJ.

*Contract,* Construction, Validity. *Bills and Notes,* Validity. *Corporation,* Officers and agents.

The decision in *Moss* v. *Copelof,* 231 Mass. 513, that a provision in an agreement between three persons, constituting all the directors of a Massachusetts corporation, that, upon one of them severing all active connection with the corporation, he should "be credited with an amount equivalent to one month's salary, namely: Six hundred (600) dollars, which shall be applied on account of his indebtedness to said . . . Company for unpaid stock subscription," did not mean that the $600 was to be paid to the retiring director but that it should be credited on his account with the corporation, affirmed.

In an action upon a promissory note given by two of the three directors of a Massachusetts corporation to the third director as part of an agreement made upon the third director severing his active connection with the corporation, the defendants answered that the note was made pursuant to an alleged agreement, and it appeared that the agreement also provided that the plaintiff should receive the equivalent of one month's salary, $600, which should "be applied on account of his indebtedness to" the corporation "for unpaid stock subscription." The stock had been issued to the plaintiff for his promissory note for $3,500, upon which he still owed more than $650. The agreement was made among the directors who, in so doing, intended to act as partners and not as directors and had in view their personal rights and obligations and not those of the corporation. At the time of the making of the agreement terminating the plaintiff's active connection with the corporation, the plaintiff was in its employ but there was no agreement in force that the employment should be continued and the corporation was not indebted to the plaintiff. *Held,* that

(1) Requests for rulings based on the assumption that the plaintiff had a contract with the corporation for continuous employment properly were refused;

(2) Requests for rulings in effect that, if the plaintiff in good faith believed he had an agreement for continuous employment by the corporation, his termination of the employment at the request of the other two directors was a sufficient consideration to the company for crediting him with $600, properly were refused;

(3) The giving of $600 to the plaintiff by the corporation was illegal, regardless of the purpose for which it was to be applied;

(4) Evidence tending to show that other stockholders of the corporation

obtained their stock by issuing notes therefor in violation of St. 1903, c. 437, § 14, was immaterial;

(5) The note in suit being issued as part of an invalid agreement, it was proper to refuse to rule that there should be a finding for the plaintiff.

CONTRACT on three promissory notes, signed by the defendants as makers and payable to the plaintiff, each for $40, payable in six months and dated respectively July 21, July 28 and August 4, 1917. Writ in the Municipal Court of the City of Boston dated February 8, 1918.

The defendants' answer, besides other matters, alleged "that if the plaintiff offers evidence tending to show that the defendants made the notes set forth in the plaintiff's declaration, then the defendants say that said notes were made in pursuance of an illegal agreement and that said notes are therefore null and void."

On removal to the Superior Court, the action first was tried before *King*, J., and there was a verdict for the plaintiff. The defendants alleged exceptions which were sustained by a decision reported in 231 Mass. 513.

The action then was heard by *Morton*, J., without a jury. The agreement between the plaintiff and the defendants, referred to in the opinion, relating to the termination of his active connection with the M. & C. Skirt Company, in substance provided (1) that the plaintiff was "to terminate his employment" on January 1, 1917, (2) that on terminating his employment the plaintiff was to be "credited with an amount equivalent to one month's salary, namely: Six hundred (600) dollars, which shall be applied on account of his indebtedness to said M. & C. Skirt Company for unpaid stock subscription," (3) that the defendants would pay him $125 a week for the six months next after January 1, 1917, (4) that during the six months beginning on July 1, 1917, the defendants would advance to him $125 a week to be secured by plaintiff's stock in the corporation, (5) that during the year 1917 the defendants would not "increase their present salaries, and during said year, and thereafter" would not "do any act or thing to benefit their stock holdings or derive any benefit therefrom at the expense of the holdings of" the plaintiff, without first giving him "an opportunity to share in said benefits," and (6) the defendants should "have the privilege in their discretion, if they so desire, to do, to cause said M. & C. Skirt Company to make said

advances described in said paragraph four upon the terms therein stated."

When the time came for the advances to be made, the plaintiff agreed to take, for each weekly instalment of $125, $45 a week in cash and $80 in two notes of $40 each signed by the defendants, one note to be payable in six months and the other in a year. The first two six months' notes so given were paid when due. The notes sued on were the third, fourth and fifth six months' notes. When the time came for the delivery of the sixth lot of two notes, there was a dispute as to the collateral to be given by the plaintiff. Thereupon the defendants refused to make further advances. They also refused to pay the three notes here in question and this action was brought.

At the close of the evidence, the plaintiff asked for the following rulings:

" 1. On all the evidence the plaintiff is entitled to a verdict for the amount declared on."

" 7. Unless affected by other facts in the case, the words in the second paragraph of the agreement of December 19, 1916, to wit: ' upon said termination, said party of the second part shall be credited with an amount equivalent to one month's salary ' shall be construed to mean that the defendants shall cause the plaintiff to be credited on the books of the company with said amount by giving full value therefor to the company.

" 8. In the paragraph numbered second of the agreement of December 19, 1916, the words, ' upon said termination, said party of the second part shall be credited with an amount equivalent to one month's salary ' shall not, as a matter of law, unless affected by other facts in the case, be construed to mean that the company shall credit the plaintiff with that sum without receiving consideration therefor."

" 13. If the plaintiff was employed by the company at a yearly salary or by the year, this was evidence that he was under contract with the company in its employ for at least one year from May 9, 1916."

" 15. If the plaintiff in good faith believed he had an agreement to work for the company at least for a year from May 9, 1916, the defendants' promise that the plaintiff should be credited with $600 was a legal promise.

"16. If at the defendants' request the plaintiff gave up a right he had to continue in the company's employ, then the agreement whereby the plaintiff was to be credited with $600 was an honest and legal one."

"18. If after May 9, 1916, the plaintiff continued in the employ of the company under agreement with its directors to so continue at his will, then the agreement to terminate his employment upon receiving $600 out of the funds of the company was an honest and legal agreement.

"19. If the plaintiff in good faith believed he had an agreement to work for the company as long as he pleased, his termination of his employment was sufficient consideration moving to the company which made legal the defendants' promise that he should be credited with $600.

"20. The plaintiff and the defendants, being all the directors of the company, could agree together without a formal meeting of the directors to pay the plaintiff $600 out of the company's funds upon the termination of the plaintiff's employment on January 1, 1917, if he had a right to continue the employment after that date, until May 9, 1917, or for a period to end at his will.

"21. If there was a difference of opinion between the plaintiff and the defendants about his remaining in active connection with the corporation, the court, sitting as a jury, may find that the agreement to pay the plaintiff $600 was an honest agreement."

"26. If the stockholders other than the parties in suit and Harry Bergson paid for their stock by promissory notes and not in cash, their holdings of stock are illegal and the agreement of December 19, 1916, is legal without their consent.

"27. The defendants must prove by a fair preponderance of the evidence that the notes are illegal.

"28. If the plaintiff had an open account with the company upon which he was credited by the company with $600, this did not constitute an application on account of his indebtedness for unpaid stock subscription."

"32. The plaintiff was not legally indebted to the company for unpaid stock subscriptions on December 19, 1916.

"33. If on December 19, 1916, the plaintiff was not legally indebted to the company for unpaid stock subscriptions, the agreement to cause the company to credit the plaintiff with $600 on

account of such alleged indebtedness was no fraud on the stockholders and was not illegal."

"35. The directors of a corporation, acting in good faith, have the power to employ a person for a period equal to the existence of the corporation."

The judge filed a memorandum of findings and rulings, in substance as follows:

It was held in this case in 231 Mass. 513, "that the $600 named in article second [of the contract of December 19, 1916], was to be paid out of the funds of the corporation to the plaintiff, upon an agreement by the parties not made at a meeting of directors, and not submitted to the stockholders either in or outside of a meeting, and that such an agreement was illegal, if nothing was due to the plaintiff from the corporation.

"The books of the corporation show, and I find, that on January 1, 1917, there was credited to the plaintiff from the corporation up to that date the amount of $656.92 on account of salary; that the amount was made up principally from a weekly credit of $25, which the plaintiff agreed should be retained by the corporation to be applied on account of a promissory note of $3,500 given by the plaintiff in payment of stock subscription, and that the plaintiff was indebted to the company upon that note to an amount in excess of $656.92.

"It was contended by the plaintiff that that note was illegal, because in violation of St. 1903, c. 437, § 14, and that, therefore, the plaintiff had a credit balance. I find and rule against the plaintiff upon this point. I find that the corporation was not indebted to the plaintiff on January 1, 1917.

"The plaintiff contended further that he had a contractual right to continue in the corporation's employ after January 1, 1917, and that his relinquishment of such right legalized the payment to him and legalized the agreement to pay him $600 from the funds of the corporation.

"I find the following facts: A contract was made between the parties on May 11, 1911, under which it was agreed that for five years the plaintiff should be 'factory manager' and 'president' of the corporation, and the corporation contracted with him to serve as factory manager with a certain salary therefor. He was also duly elected president. Upon the expiration of the five years,

and until January 1, 1917, the parties continued to draw weekly salaries as theretofore. No further express agreement as to the terms of employment was entered into by the parties personally. There was no formal directors' or stockholders' meeting indicating a corporate agreement with the plaintiff that he should continue during 1917 in the employ of the corporation, and no evidence from which I could find that the defendants made such an agreement as directors outside of a meeting.

"In the fall of 1916 various differences as to the management arose between the plaintiff and the defendant Copelof, which resulted in the decision that one or the other must sever his connection with the management. Negotiations extending over a considerable period resulted in the agreement of December 19, 1916. As a part of these negotiations, the plaintiff on December 12, 1916, was elected at his request president, but on the understanding that he should at once resign, the resignation to take effect on January 1, 1917, and in accordance with that understanding he did resign. He knew before he was elected that he would not serve as president. It is apparent from the evidence, that in these negotiations, as well as in their prior relations and agreements, the parties all considered that they were partners, entitled to an equal share in the profits and management of the business, and the evidence would warrant a finding that there was an implied agreement, at least, between them as partners in effect up to December 19, 1916. It is equally clear that they were intending to act as partners in the various negotiations and agreements, and not as directors, and had in view their personal rights and obligations and not those of the corporation. The original contract of 1911, the method of paying for stock by notes, the contract of December 19, 1916, and the oral evidence as to the negotiations leading up to it, all indicate such intention. The parties all entered into the contract of December 19, 1916, in good faith, in the honest belief that they were conserving the interests of the company, and that the contract was legal; but the effect of the contract, as shown by the above findings, was to obligate the company to pay to the plaintiff from its funds an amount which the company did not owe him, at a time when it was not under contractual obligations to him.

"I, therefore, find for the defendants."

Material portions of St. 1903, c. 437, § 14, were as follows: "Capital stock may be issued for cash, property, tangible or intangible, services or expenses. Stock which is issued for cash may be paid for in full before it is issued or by instalments. . . . No stock shall be at any time issued unless the cash, so far as due, or the property, services or expenses for which it was authorized to be issued has been actually received or incurred by, or conveyed or rendered to, the corporation; and the president, treasurer and directors shall be jointly and severally liable to any stockholder of the corporation for actual damages caused to him by such issue." *

*P. Rubenstein,* for the plaintiff.

*H. Bergson & F. J. W. Ford,* for the defendants, submitted a brief.

De Courcy, J. This action, brought to recover on three promissory notes made by the defendants pursuant to a written agreement between the parties, was recently before this court; and the essential facts are set forth in the opinion, 231 Mass. 513. At the second trial in the Superior Court the judge, sitting without a jury, found for the defendants and filed a memorandum of findings. The case is now here on the plaintiff's exceptions to the denial of requests for rulings and to the exclusion of certain evidence.

The plaintiff and the defendants were the only directors, but not the only stockholders, in the M. &. C. Skirt Company, a Massachusetts corporation. Differences as to the management arose between them, which resulted in the agreement of December 19, 1916, by which the plaintiff terminated his participation in the business. The second paragraph of the agreement provided: "Upon said termination said party of the second part shall be credited with an amount equivalent to one month's salary, namely: Six hundred (600) dollars, which shall be applied on account of his indebtedness to said M. & C. Skirt Company for unpaid stock

---

* This section was amended by St. 1918, c. 257, §§ 350, 478, to take effect (St. 1920, c. 2) on February 1, 1921, by adding after the word "corporation;" and before the words, "and the president" in the last clause above quoted, the words: "nor shall any note or evidence of indebtedness, secured or unsecured, of any person to whom the stock is issued, be deemed to be payment therefor;"

subscription." The plaintiff's seventh and eighth requests in effect were, that by the true interpretation of this paragraph the $600 was to be paid by the defendants, and that they were to cause the plaintiff to be credited therewith on the books of the company. This same contention was urged at the previous argument; but the court decided otherwise. As was said in the opinion (231 Mass. 513, 517): "The provision made by the article is that the plaintiff 'shall be credited' with $600 not that he shall be paid $600. That means 'credited' by the corporation." The trial judge rightly adopted this interpretation.

Construing the agreement as providing for payments from the treasury of the corporation, the plaintiff's requests numbered 13, 16, 18, 20 and 35 are based on the assumption that the plaintiff had a contract with the corporation to work for it to May 9, 1917, or indefinitely at his will, and that the agreement to terminate his employment was ample consideration moving to the corporation for such payments by the company. The trial judge, however, has found "There was no formal directors' or stockholders' meeting indicating a corporate agreement with the plaintiff that he should continue during 1917 in the employ of the corporation, and no evidence from which I could find that the defendants made such an agreement as directors outside of a meeting." This and the other findings that "the corporation was not indebted to the plaintiff on January 1, 1917," and that the corporation "was not under contractual obligations" to him, render these requests immaterial.

Requests numbered 15, 19 and 21 are, in effect, that if the plaintiff in good faith believed he had an agreement to work for the corporation, his termination of the employment at the request of the defendants was sufficient consideration to the company for crediting him with $600. See *Blount* v. *Wheeler*, 199 Mass. 330, 336. But, as the judge found, ". . . they were intending to act as partners in the various negotiations and agreements, and not as directors, and had in view their personal rights and obligations and not those of the corporation." Further, in order to bind the property of the corporation, it must appear that from its standpoint the parties acted honestly and in good faith; and in effect the finding of the trial court is to the contrary.

The requests numbered 28, 32 and 33 are based on the claim

that the plaintiff's stock was illegally issued for his note (see St. 1903, c. 437, § 14); that any "credit" on account thereof would not constitute payment, and could not be enforced against the corporation. As to this it suffices to say that it was illegal to give the $600 to the plaintiff regardless of the purpose for which it was to be applied. And as matter of fact the plaintiff from the beginning has acted on the assumption that the stock was legally issued to him. See *Soghomonian* v. *Garabedian*, 231 Mass. 445.

Request numbered 27 need not be discussed, in view of the evidence and findings. The offer to prove that all the other stockholders except the defendants and one Bergson, obtained their stock by issuing notes was rightly excluded, not being material in the present case. The request numbered 26 could not have been given even if the evidence were admitted. Presumably these other stockholders were acting as such in good faith. The legality of the agreement of December 19, 1916, was not dependant on their consent. *Palmbaum* v. *Magulsky*, 217 Mass. 306.

Finally the first request was denied rightly. The effect of the agreement, in pursuance of which the notes in suit were issued, was to obligate the M. & C. Skirt Company "to pay to the plaintiff from its funds an amount which the company did not owe him, at a time when it was not under contractual obligations to him." The $600 was to be applied on account of the plaintiff's indebtedness for unpaid stock subscriptions, in violation of St. 1903, c. 437, § 14. The further illegality of the sixth clause of the agreement need not be considered. *Moss* v. *Copelof, supra.*

*Exceptions overruled.*