ERNEST ALBERT NICKEL *vs.* MAX FOX.

Dukes County.    October 24, 1927. — January 6, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Bills and Notes*, Validity, Holder in due course, Consideration.    *Ship. Wreck.    Abandoned Property.    Salvage.*

A steamer loaded with merchandise belonging in part to the French government and in part to the government of the United States of America and bound for France, early in November, 1918, was in collision in Vineyard Sound, and was beached.    Efforts at saving the ship were made by the navy department, when an officer in charge of the salvage department notified her captain that the department would make no further effort and that the captain would have to assume the responsibility for boat and cargo; and on November 29 he formally abandoned the ship.    She lay without guards, life, light or line till about January 13, 1919, when coastguard vessels began again to patrol the wreck. A salvage company, employed by the United States, subsequently recovered considerable of her cargo shipped by the United States. In June, 1919, one who had acquired some of the cargo from fishermen made a sale of it and was paid by a check on a bank, which was payable to a nominee of his, was indorsed by the nominee, and on which the drawer afterwards stopped payment.    A judge who, without a jury, heard an action by the vendor upon the check found that the ship and cargo had not been abandoned when the goods in question were taken from the cargo or acquired by the fishermen who sold them to the plaintiff, and that these goods were not salvaged; and found for the defendant.    *Held*, that

(1) The plaintiff did not have rights as a holder in due course;

(2) The cessation in effort of the coastguard to save the ship did not constitute an abandonment of the cargo as a matter of law;

(3) The plaintiff did not have a lien for salvage which passed to the defendant by the sale and constituted a consideration, there being nothing to show that those who sold to the plaintiff took the goods to preserve them for the owner or as a basis for claims of salvage; instead, the transaction bore earmarks of dealing in goods believed to have been taken without right;

(4) There was a complete failure of consideration for the check;

(5) Even if the defendant knew all the facts attending the plaintiff's title and got all that the plaintiff had to convey, the transaction could be found to have been illegal, and the law would not assist either party, but would leave him where it found him;

(6) The finding for the defendant was not wrong as a matter of law.

CONTRACT OR TORT upon a check of the defendant upon the New Bedford Safe Deposit and Trust Company in the

sum of $4,625 payable to the order of P. M. Jordan and by him indorsed. Writ dated February 13, 1920.

In the Superior Court, the action was heard by *Cox*, J., without a jury. Material facts found and rulings made by the judge are stated in the opinion. The judge found for the defendant and reported the action to this court for determination.

*J. H. Powers*, for the plaintiff.

*S. Rosenberg*, for the defendant.

WAIT, J. The plaintiff sues upon a check given by the defendant payable to a third person and indorsed to the plaintiff. The defendant stopped payment of the check and denies liability.

There is no dispute that the check was given by the defendant as the purchase price of goods bought by him from the plaintiff and was made payable to a nominee for the plaintiff. Liability is disputed on the ground that no title to the goods passed or could pass from the plaintiff to the defendant; that the consideration has failed; and that the transaction is illegal. This defence is open where, as here, the plaintiff and defendant are the real parties to the controversy, and the plaintiff is only in form a holder in due course. The holder had notice of every defect. G. L. c. 107, §§ 75, 79.

The evidence reported will support findings of the trial judge as follows: The goods dealt in were known by both parties to the sale to be jerkins and shirts taken by fishermen from the cargo of the sunken steamer "Port Hunter" some time between November 29 and the last of December, 1918, while it lay without life, light, lines or guards, submerged upon a shoal in Vineyard Sound. The "Port Hunter", an English steamer loaded with cargo belonging in part to the French government and in part to the government of the United States of America and bound for France, early in November, 1918, was in collision in Vineyard Sound; was towed to and was beached on a shoal, submerged from her stern to her number one hatch, and full of water. The navy department, then in control of coastwise salvage facilities, sent vessels to her assistance which removed considerable cargo in an effort to lighten the ship. On November 16, she

settled further and broke in two. After a survey by the naval officer in charge of the salvage department of the navy, the officer decided that further operation by the navy department was of no avail to save the ship. He notified her captain that the department would make no further effort; that the captain would have to assume the responsibility for boat and cargo; and on November 29 formally abandoned the ship. She lay without guards, life, light or line till about January 13, 1919, when coastguard vessels began again to patrol the wreck. A salvage company, employed by the United States, subsequently recovered considerable of her cargo shipped by the United States. Before January, 1919, the plaintiff had made sales of articles from the cargo purchased by him from fishermen, some of them to the defendant. On or about June 28, 1919, he made the sale in question. The transactions were carried on in the evening, as the plaintiff stated that he did not wish the goods to go out in the daytime. What goods the defendant took away were taken at night by truck to a cove a few miles from Vineyard Haven, and thence by small boat to New Bedford, where they were stored in a barn. After the sale the defendant was notified by the United States marshal not to sell the goods. Some of the goods were taken on a search warrant by one purporting to be a Federal officer, and the defendant was told that those goods which he had left in the plaintiff's hands had also been taken away. In part, at least, at the request of the plaintiff, he tried to get back the goods, and in January of 1920 was informed by the war department that it would consider the return if he would furnish affidavit of the plaintiff that the goods were salvaged by him after June 28, 1919, when the government ceased operations at the wreck. No such affidavit was furnished by the plaintiff, although he was informed of the contents of the letter.

These findings would justify further findings that ship and cargo had not been abandoned when the goods in question were taken from the cargo or acquired by the fishermen vendors of the plaintiff, and that these goods were not salvaged.

The trial judge found for the defendant, and reported the case for determination by this court.

It is not necessary to deal in detail with the rulings made upon the numerous requests filed by the parties. Many of them are disposed of by the findings of fact. Those that must be discussed present the question whether, as matter of law, the plaintiff had title to the goods sold, so that there was a consideration for the check.

The title of the United States never passed from it; for at no time were the goods abandoned, and until abandonment no one else could have more than a title by possession. See *Merrill* v. *Fisher*, 204 Mass. 600, 602. The judge was justified in holding that a cessation in effort of the coastguard to save the ship did not constitute an abandonment of the cargo, especially where responsibility for the ship and cargo was left with the captain.

There is no force in the contention that the plaintiff had a lien for salvage which passed to the defendant by the sale and constituted a consideration. The goods were removed from the wreck or picked up from the sea by fishermen. There is nothing to show that these men took them to preserve them for the owner, or as a basis for claims of salvage. Their conduct in selling to the plaintiff justifies a finding that they did not. The dealings of buyer and seller in the sale of June 28 fully support a finding that they were not dealing in a right to salvage. Instead, the transaction bears earmarks of dealing in goods believed to have been taken without right. The right to compensation for salvage depends upon scrupulous regard, on the part of the salvor, for the right of the true owner. *Mason* v. *Ship Blaireau*, 2 Cranch, 240. *The Bello Corrunes*, 6 Wheat. 152. *Houseman* v. *Schooner North Carolina*, 15 Pet. 40. As was stated in *The Island City*, 1 Black, 121, 130, "While the general interests of society require that the most powerful inducements should be held out to men to save life and property about to perish at sea, they also require that those inducements should likewise be held forth to a fair and upright conduct with regard to the objects preserved. Compensation for salvage service presupposes good faith, meritorious service, complete restoration, and incorruptible vigilance, so far as the property is within the reach or under the control

of the salvors. Salvors are required by the nature of their undertaking, and by a due consideration of the large award allowed them for their services, to be vigilant in preventing, detecting, and exposing every act of plunder upon the property saved; and if they are guilty of embezzlement, whether at sea, in port, or even after the property is delivered into the custody of the law, it works a forfeiture of their claim to salvage."

Consideration failed completely. The defendant was justified, legally, in stopping the check, and refusing payment.

If it be urged that the defendant knew all the facts attending the plaintiff's title and got all that the plaintiff had to convey, the short answer is, that the transaction could be found to be illegal, and that the law will not assist either party, but will leave him where it finds him. *Moss* v. *Copelof,* 231 Mass. 513. *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113.

The rulings of the judge were right. He was not bound as matter of law to find for the plaintiff. In accord with the terms of the report, judgment for the defendant is to enter on the finding.

*So ordered.*