José Nazario, Plaintiff and Appellant, v. Juan G. Gallardo, Treasurer, Defendant and Appellee; José Nazario, Plaintiff and Appellant, v. Juan G. Gallado, Treasurer, Defendant and Appellee.

No. 4999 and 5001. Argued November 5, 1929.—Decided April 3, 1930.

*Leopoldo Tormes*, for appellant. *James R. Beverley, Attorney General*, and *R. Cordovés Arana* and *Tomás Torres Pérez, Assistant Attorneys General*, for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

These cases have been submitted together by the parties and they will be so decided. The same legal questions are involved in both cases.

The plaintiff Nazario is engaged at Ponce in the business of importing from the United States roasted and semi-roasted coffee to be sold in Porto Rico wholesale and retail.

He alleged in both complaints that on certain dates he paid under protest the fees prescribed by Act No. 19—to regulate the sale of foreign coffee whether pure or mixed with Porto Rican coffee, and to provide funds to defray the expenses of such regulation and for other purposes, approved

April 19, 1928—paying the said fees in stamps purchased by him for use in his business of importing coffee. He further alleged that said Act No. 19 is unconstitutional on several grounds set forth by him, and prayed for the refund of the fees so paid, claiming the collection thereof to have been illegal.

The defendant demurred to each complaint for want of jurisdiction in the court to try the actions, and for lack of facts sufficient to constitute a cause of action. The court sustained the first ground of demurrer and stated that, should it have jurisdiction, it would also sustain the second ground.

As already indicated, the plaintiff paid the fees under protest and brought the two actions herein under Act No. 8, approved April 19, 1927, which refers to the payment of taxes under protest and establishes the procedure to be followed in the courts for the refund of such taxes. Section 1 of the said act, in its pertinent part, says:

"Whenever a taxpayer believes that he should not pay any tax or part thereof, . . ."

The appellee contends that, as the sum paid by the plaintiff was not a tax, he could not resort to the act invoked for the purpose of claiming the refund of the said sum.

In our opinion it is clear that Act No. 19 of 1928 does not impose a tax. It regulates the sale of foreign coffee in Porto Rico and imposes certain inspection fees in order to provide the necessary funds for defraying the expenses of such regulation. Section 23 of the said act reads as follows:

"The entire proceeds of the sale of the seals or stamps, and of the licenses and fines provided for in this Act, shall be covered into the Insular Treasury and shall constitute a special fund which shall be known as 'Coffee Protection Fund,' which shall be devoted to defraying the expenses occasioned by the enforcement of the laws for the protection of Porto Rican coffee and for inspecting and guaranteeing the origin thereof."

In *Lever Bros. Co.* v. *Commonwealth* (Mass.), 121 N. E. 516, 517, it was said:

"There is another complete bar to this part of the petitioner's claim, upon which this decision also rests. The payment required by said sections 54 and 91 is not a tax or an excise. It is a mere registration fee. It is so named in the statute, where the word 'fee' is used as distinguished from the words 'tax or excise.' See St. 1909, c. 490, part 3, 54, 69, 70, and St. 1903, c. 437, 90. The only jurisdiction granted to the court by section 70 (under which this petition is brought) is to consider grievances arising from the exaction of 'said tax or excise or of any portion thereof.' Plainly the fee is not 'costs' under section 70. It is manifest that the court has no jurisdiction to consider the question of the fee. The commonwealth as a sovereign power has not consented to be impleaded respecting that subject."

In 26 R.C.L. 20, the jurisprudence on the question is summed up as follows:

"There is another form of pecuniary charge which is not a tax but an incident of the power of regulation, but which, unlike the imposts discussed in the previous paragraphs, may be imposed upon the performance of an act which the legislature can neither tax nor hamper by any other pecuniary burden of a revenue producing character. When an occupation or an act is of such a character that a reasonable amount of inspection or supervision by public officials is necessary for the public health, morals, or safety the legislature may provide that such inspection or supervision shall be performed at the expense of the persons engaging in the occupation or performing the act, and that no one shall engage in the occupation or perform the act until a fee or charge sufficient to cover the cost of the inspection or supervision has been paid. Similarly when an occupation is of such a character that lack of skill and proficiency on the part of those who engage in it will be a menace to the public health or safety, an examination may be required of those who seek to engage in it, and the cost of such examination may be met by fees imposed upon those who take it. The money thus raised, though paid into the treasury, is appropriated in advance to the use provided by the statute, and does not go to the general support of the government. A statute imposing such a charge is not the levy of a tax, but a regulation, and the fee is a mere incident of the regulation, and in levying it the legislature is not subject to the limitations which surround the taxing power."

The only doubt existing in our mind has reference to the scope to be given to the decision of the United States Circuit

Court of Appeals for the First Circuit in *Gallardo* v. *Porto Rican American Tobacco Co.*, 26 Fed. (2nd) 668, invoked by the appellant, wherein that court said:

"In accordance with a statute of the Legislature of Porto Rico, approved April 23, 1927, entitled 'An act to protect Porto Rican tobacco and cigars against fraud and adulteration by means of a guaranty and advertising agency in the city of New York, United States, the issue of guaranty stamps determining the origin of the tobacco and by adequate expert inspection, establishing an inspection fee to defray such expenses as the application of this act may occasion,' etc., an inspection fee was established, the payment of which was resisted by the appellee. In its bill of complaint the tobacco company alleges that this inspection fee is an excise tax. While denominated an inspection fee, it is in reality a tax assessed upon the appellee, and clearly falls under the inhibition of the Act of March 4, 1927."

In support of his contention that the above decision is not applicable to the present case, the appellee argues—and in our opinion correctly—as follows:

"That case dealt with stamps to be affixed to tobacco in accordance with the provisions of Act No. 24 of April 23, 1927, amending sections 5 and 9 of Act No. 100, approved August 29, 1925, which in turn amended Act No. 19 of September 17, 1923.

"It is true that it was so held by the Circuit Court, but it is no less true that in the case cited the plaintiff contended that the inspection fees in that case were excise taxes, and the defendant acquiesced in this for the purpose of filing a demurrer for want of jurisdiction, so that the court, in accordance with the point of view of both litigants, but without going into the merits of the case, held that such fees were 'in reality a tax assessed against the appellee,' and consequently sustained the demurrer for lack of jurisdiction in the court, since in accordance with the Act of Congress of March 4, 1927, ' . . . no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Porto Rico shall be maintained in the District Court of the United States for Porto Rico.'

"The act which was construed in that case is not essentially the same as the Act of 1928. The purpose of the former was to protect the tobacco and cigars produced in Porto Rico against fraud and adulteration, and for that reason the stamps were furnished free and to be affixed to all tobacco grown or manufactured in the Island, an

inspection fee being collected on any kind of tobacco that might be used, sold or delivered, no matter where it came from. Such inspection fees, even without entering into the merits of the case, were in reality a tax and their purpose when applied to any kind of tobacco was to provide revenue. Act No. 19 of 1928, on the contrary, has for its object the regulation of the sale of foreign coffee in Porto Rico, considering as such any coffee not grown in the Island. The amount of the fees to be paid is fixed at the rate of two cents per pound, and the stamps are affixed to the packages or containers of foreign coffee, whether pure or mixed with Porto Rican coffee, sold in the local markets or exported abroad.''

Therefore, and the plaintiff herein not having paid a true tax, the lack of jurisdiction is manifest.

The trial court stated in this connection:

''We hold that the law by its terms refers only to the refund of taxes. Consequently, if the fees paid under Act No. 19 of 1928 are not taxes juridically speaking, the defendant can not invoke that act in bringing the present action.''

It would seem useful to reproduce here the following quotation from Cyc., set out in the opinion of this court in *Sauri y Subirá* v. *Sepúlveda,* 25 P.R.R. 224, 226:

''The consent of the State to be sued is entirely voluntary on its part, and it may therefore prescribe the cases in which and the terms and conditions upon which it may be sued, and how the suit shall be conducted; and the State can be sued only in the cases, manner, place and courts prescribed by it, and one who seeks to avail himself of such consent must pursue the remedy as it is provided by law, and must fully comply with the prescribed terms and conditions, and it is the duty of the courts to see that the prescribed methods of procedure are followed.'' 36 Cyc. 913.

Considering further the complaints herein, we think that the second ground of demurrer must likewise be sustained. We are of opinion that Act No. 19 of 1928 is constitutional.

The appellant contends that the act is unconstitutional because, so he claims, it tends to prevent the sale in Porto Rico of coffee imported from the United States, thereby setting up an unfair competition between the said coffee and that

grown in Porto Rico (and he adds, as a further argument, that the total sale of the coffee grown in the Island covers ninety per cent of the total amount consumed); because it tends to regulate foreign and interstate commerce; because it deprives the citizen of his property without due process of law, and it is not uniform; because it violates the laws which prohibit the levying of a tax on goods produced in the United States and imported into Porto Rico; because it is in conflict with the Federal Food and Drugs Act, and because it includes more than one subject in its title.

A study of the Pure Food and Drugs Act(21 U.S.C. § 10) leads to the conclusion that its provisions in regard to labeling or branding do not conflict with those of the Porto Rican statute, which requires that the containers for the sale or exportation of foreign coffee, pure or mixed with Porto Rican coffee, "shall be labeled in letters one-fourth inch high with the name, firm name, or corporate name of the natural or artificial person to whom the license has been issued, the number of the license, and the words 'dealer in foreign coffee.' If the containers hold pure foreign coffee, they shall be so marked. If they hold foreign coffee mixed with Porto Rican coffee, it shall be stated that the contents is a mixture." Both acts are consistent and easily supplement each other.

It is true that the act interferes to some extent with foreign and interstate commerce, but this is done in a way that is considered permissible by the jurisprudence. An inspection law is involved here, and it has been held that laws of this character constitute an exception to the general rule.

"The right of the states to pass inspection laws is expressly recognized, so far as foreign commerce is concerned, in Const. art. 1, par. 10, . . . The same principle applies to interstate commerce." 12 C. J. 52, par. 63, Note 9 (a), citing *Patapsco Guano Co.* v. *North Carolina Bd. of Agriculture*, 171 U. S. 345, 18 S. Ct. 862, 43 L. ed. 191, and other cases.

We do not think that the act interferes with the practice of any profession or occupation in such a manner as to

constitute an infringement of personal or property rights. It regulates, but it does not prohibit. It intervenes for the purpose of safe-guarding the right of the community to know the truth in regard to the food it consumes; it does not deprive anyone of property without due process of law. Here a situation is involved different from that created by the municipal ordinance which was held to be invalid in *People v. Correa*, 31 P.R.R. 504.

As to whether the title of said Act No. 19 complies with the requirements of our Organic Act, this is a question which has already been judicially determined in the affirmative, thus:

"Title of Act Porto Rico April 19, 1928, 'An act to regulate the sale of foreign coffee, whether pure or mixed with Porto Rican coffee, and to provide funds to defray the expenses of such regulation and for other expenses,' is adequate, under Organic Act, 34 (48 USCA 832)." *González v. Gallardo*, 31 Fed. (2d) 946.

By reason of all the foregoing, the judgments appealed from must be affirmed.

Mr. Justice Wolf dissented. Mr. Justice Texidor took no part in the decision of this case.

ON MOTION FOR REHEARING, JULY 21, 1930.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The questions involved in the two cases herein being the same, they were considered in a single opinion. In both cases the appellant has filed identical motions for rehearing, which we will consider together.

In the motions there is transcribed the text of an act approved by the Legislature at its last session authorizing the utilization of any balance remaining on June 30, 1930 in the fund entitled "Coffee Protection Fund" created by Act No. 19 of April 19, 1928, (after covering expenses of inspection and auditing required by said Act No. 19), for the promotion

of agriculture and of rural education in the coffee zones of the Island through the establishment of experimental and demonstration farms. The appellant maintains that the passage of such an act by the Legislature upholds his contention, namely, that what Act No. 19 of 1928 has imposed is a tax and not an inspection fee.

The fact that provision is made for the disposal of any balance remaining after defraying the expenses incidental to the execution of Act No. 19 of 1928, especially in the manner prescribed by the Act of 1930, has not of itself the scope attributed to it by the appellant, who has not cited to us any decision supporting his contention.

It is also urged that this court has disregarded its own previous rulings in *Benítez Sugar Co.* v. *Aboy*, 34 P.R.R. 33. That decision was not ignored as claimed; what occurred is that the case cited was not applicable. It was held in that case, citing section 1 of Act No. 17 of 1920, that "under this section it is clear that any tax in Porto Rico is covered by its terms"; and what we have decided in the present cases is that Act No. 19 of 1928 imposes an inspection fee, not a tax. No property or excise taxes are involved here.

It should not be overlooked that, although the principal ground of our decision affirming the judgments rendered by the District Court of Ponce was that the plaintiff was not entitled to resort to the remedy provided by Act No. 8, 1927, in regard to the recovery of taxes paid under protest, both the district court and this court considered the cases on their merits and concluded that the act impugned was valid.

On this aspect of the cases, the motions for rehearing reiterate arguments which had been previously submitted and considered. Our views in this connection are unchanged.

Other arguments adverting to the absence of amendments to said Act No. 19 of 1928 reducing the fees, to the difficult situation which is claimed will arise in the Island by reason of the decision of this court now sought to be reconsidered,

and to the possible danger that under the cloak of an inspection fee a real tax may be imposed—are not regarded by us as sufficient to justify the setting aside of our former judgment. It might perhaps be opportune here to call attention to the fact that Congress has not only abstained from interfering—although it has the power to do so—with the action of the Legislature in this matter, but it has gone further and recently authorized the Legislature "to impose tariff duties upon coffee imported into Porto Rico, including coffee grown in a foreign country coming into Porto Rico from the United States."

The motions for rehearing must be denied.

Mr. Justice Wolf dissented.