Tomasello, J.
In an action of contract the plaintiff, to whom two checks were transferred by one Applebaum for value, seeks to recover the amounts of the checks with interest and protest fees from the defendant corporation, the maker who stopped payment thereof. In addition to pleas of general denial, payment, fraud and recoupment, the answer of the defendant alleges illegality.
The evidence discloses that in June 1942 the checks in issue were given to the said Applebaum by the defendant in part payment for the sale of 1021 used tires to the defendant, the total sale price aggregating the sum of $2,-140.00 or approximately $2.00 per tire. Witnesses for the defendant testified that sales of used tires were regulated by the office of the Price Administrator under the Price Control Act and that the tires sold were mostly sizes 6.00-16 and 6.50-16 and had no treads and came within the maximum price allowance for tires of these sizes of $1.50 *74 per tire. The said Applebaum testified for the plaintiff that the agreed price for each tire was $2.00; that the ceiling price on basic tire carcasses was $1.50; and that the sale was not covered by the ceiling prices and that the tires were not sold in excess of the ceiling prices.
During the trial no objection appearing from the record to have been made by the plaintiff, counsel for the defendant called the court’s attention to “Maximum Price Regulation No. 107”, issued by the Office of Price Administration pursuant to an Act of Congress entitled “Emergency Price Control Act of 1942”, and read to the court what he considered the pertinent provisions thereof, namely, sections 1315,1351 and parts of 1315. 1360 (b) and (c) which are as follows:
“Sec. 1315. 1351 Maximum, prices for used tires and tubes. On and after March 16, 1942, regardless of any contract, agreement, lease, or other obligation, no person shall sell or deliver and no person in the business of buying or selling used tires or tubes shall buy or receive any used tire or tube, at prices higher than the maximum prices set forth in Appendices A and B hereof, incorporated herein as Secs. 1315. 1360 and 1315. 1361; and no person shall agree, offer, solicit or attempt to do any of the foregoing.”
“Sec. 1315. 1360 Appendix A: Mascimum prices for used passenger car tires and tubes, (a) The maximum price for any used passenger car tube shall be one dollar and fifty cents ($1.50).
(b) The maximum price for any used passenger car tire shall be the price listed in Table I-A.
*75 TABLE I-A MAXIMUM PRICES FOR USED PASSENGER CAR TIRES

BALLOON TIRES
6.00-16 8.10 6.65 4.45 1.50
6.50-16 9.85 8,05 5.35 1.50
(c) The maximum price for any unrepaired used passenger-car tire or tube shall be the price established by paragraph (a) or (b) of this section less an amount equal to the charges prevailing in the locality of the seller on March 7, 1942, for repairing such tire or tube so as to make it ready for use as a tire or tube on a vehicle.”
To the defendant’s pertinent requests for rulings the trial judge ruled as follows:
Request (1) That the sale of the lot of approximately 1021 used tires by Louis Applebaum to the defendant was the sale of used tires within the meaning of the term as used in Maximum Price Regulation No. 107 relating to used tires and tubes issued pursuant to and by virtue of an Act of Congress entitled “Emergency Price Control Act of 1942” and is governed by the provisions of said Act and Regulation.
Ruling (1) No. These regulations were not offered in evidence, but were referred to orally. The defendant testified that there was a price ceiling of $1.50. The plaintiff testified there was no ceiling.
*76 Request (-3)- That the sale of the said lot of approximately 1021 used tires at prices in excess of the maximTim prices allowable under the provisions of the said Emergency Price Control Act and Maximum Price Regulation was illegal and therefore void.
Ruling (3) I do not so find. I do not find that this transaction violated the provisions of Emergency Price Control Act [Sec. (1)].
Request (4) That the two checks referred to in Counts I and II of the plaintiff’s declaration and marked “A” and “B” were given as part consideration of an illegal transaction, and by the provisions of said Emergency Price Control Act of 1942 and Maximum Price Regulation No. 107 the said checks “A” and “B” are null and void.
Ruling (4) No. I find on the evidence before me that the transaction was legal.
The question presented is one of whether the regulation of the Price Administrator was in evidence and should have been considered by the trial judge in arriving at his decision.
Under the provisions of Massachusetts General Laws, chap. 233, sec. 70, the courts of this Commonwealth are required to take judicial notice of the law of the United States whenever the same shall be material.
Proclamations and reports of the President of the United States and general orders promulgated by a Director General of Railroads appointed under a president to execute the authority conferred upon him by Congress are within the scope of judicial notice even if they have not been called to the attention of the court by counsel, since they are declared to be public acts. Stankus v. New York Life Ins. Co., Adv. sheets. October 29, 1942 pages 1565, 1568, 1569. West v. N. Y. N. H. & H. R. R., 233 Mass. 162.
*77 There is a distinction however between public acts of this type and regulations declared by one appointed not directly to enforce the powers of the President, but through Act of Congress for the purpose of administering the powers conferred by them. As to the latter, because of the voluminous extent of the regulations of such an administrator, the court could not be expected to take judicial notice thereof.
The ordinary method of introducing in evidence such regulations and rules would be to present certified copies of them to the court, or otherwise calling them to the attention of the court. Finlay v. Eastern Racing Association, Inc., 308 Mass. 20, 26, 27.
In the case of Bradbury v. Central Vermont Ry., 299 Mass. 230, the court held that a mere citation by reference in a brief to the law of another state was sufficient to enable the court to take judicial notice thereof.
In Hite v. Hite, 301 Mass. 294, the court held that this principle of judicial notice would be invoked even though the record failed to show that evidence relative to a certain foreign law was presented to the trial court.
Ordinarily in jury trials it is within the discretion of the presiding judge as to whether counsel shall be allowed to read to the jury provisions of statutes, or state them orally. Commonwealth v. Hill, 145 Mass. 305, 309. Commonwealth v. Austin, 7 Gray 51, 53.
In causes before a trial judge, his attention may be orally directed to a law of another state, and of another country if the translation is agreed upon as well as by citation of statutes and decisions. Universal Adjustment Corp. v. Midland Bank, 281 Mass. 303, 317. Eastern Offices v. P. F. O’Keefe Adv. Agency, 289 Mass. 23, 26. Gorrasi v. Mansella, 287 Mass. 165, 169 of Rodrigues v. Rodrigues, 286 Mass. 77, 83.
In the matter of the regulation in issue it was within the province of opposing counsel to have objected to its intro *78 duction because not in proper form. The trial judge having permitted the regulation to be read and not having ruled it out as improperly presented must for all purposes have led counsel to presume that it was in as part of the evidence. It may have been that counsel was reading from a document already certified and capable of presentation but for the inference to be drawn in permitting it to be orally presented. Incompetent evidence if admitted without objection has the same probative effect upon an issue being tried as if competent although had it been objected to, it must have been excluded as incompetent. Norman and Houghton Mass. Trial Evidence, 2nd Ed. sec. 2024. Gethins v. Breeyear, 252 Mass. 326.
The failure of the trial judge to consider this evidence may have influenced a different conclusion.
Public Law 421-77th Congress, chap. 26-2nd session (H. R. 5990), the act in issue section 4 (a) provides:
4 (a) “It shall be unlawful, regardless of any contract, agreement, lease or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202 (b) or section 205 (f), or to offer, solicit, attempt, or agree to do any of the foregoing.”
Section 205 (b) of the same Act provides:
“ (b) Any person who wilfully violates any provision of section 4 of .this Act, — shall upon conviction thereof be subject to a fine of not more than $5000 or to imprisonment for not rnore than two years — .”
*79 As the purposes of the Act the Congress states:
‘‘ To further the national defense and security by checking speculative and excessive price rises, price dislocations and inflationary tendencies, and for other purposes. ’ ’
A contract to do any act forbidden by statute under a penalty is void, although the contract be not expressly declared void by the statute. Wheeler v. Russell, 17 Mass. 258. Allen v. Hawks, 13 Pick. 79. Pattee v. Greely, 13 Metc. 284. Doherty v. Bartlett, 81 Fed. (2nd) 920, 923. Somers v. Commercial Finance Corp., 245 Mass. 286. Gagnon v. Ainsworth, 283 Mass. 488.
In Massachusetts, contrary to the weight of authority it has been held that in order for a party seeking recovery under an illegal contract to prevail, he must first return any consideration received and any benefit derived therefrom before bringing action. Kneeland v. Emerton, 280 Mass. 371. cf. Day v. McAllister, 15 Gray, 433, 434. Doherty v. Bartlett, 81 Fed. (2nd) 920, 924, 925. Cummings v. Hotchkin Co., 292 Mass. 78, 82. cf. Bauer v. Bond & Goodwin, Inc., 285 Mass. 117, 119, 120.
This right of recovery is based upon the nature of the law involved, so that where it is considered that public policy will be advanced by allowing either of two participants in a transaction tainted with illegality, or at least the more excusable of the two, to sue for relief against the transaction, then relief is given to him in order to protect the public from fraud and imposition in the sale of commodities. Kneeland v. Emerton, 280 Mass. 371, 376. Gill v. Hornblower, 294 Mass. 26, 28. Commissioner of Banks v. Chase Sec. Corp., 298 Mass. 285, 304. Council v. Cohen, 303 Mass. 348.
In cases where public policy is not involved the parties to an illegal contract being considered in pari delicto, will ordinarily be left by law where the law finds them. Myers v. Meinrath, 101 Mass. 366. Horn v. Dorchester Mutual *80 Fire Ins. Co., 199 Mass. 534. Wolkovisky v. Rapaport, 216 Mass. 48. Pelosi v. Bugbee, 217 Mass. 579. Boylston Bottling Co. v. O’Neill, 231 Mass. 498. Nickel v. Fox, 262 Mass. 170.
In the instant case, however, the aim of the Price Control Act because of the exigencies of the times was to protect the class to which the defendant belongs, cf. Doherty v. McAuliffe, 7 Fed. Supp. 49, 56.
The law however differentiates between a buyer seeking recovery of the price paid, in which instance he must restore the consideration upon recision of the transaction. Kneeland v. Emerton, 280 Mass. 371 and a seller who has sold goods in violation of law.
In this latter class of cases in which the statutes have enacted in substance that goods should be sold only in certain manners, or in a certain manner, it has been held that contracts of sale which do not meet the requirements of such statute are absolutely void, for the reason that the purpose of such statute is to protect the buyer from the imposition and fraud of the seller; that purpose would be thwarted unless the contracts are held to be void, and the seller is denied recovery of the purchase price. Miller v. Post, 1 Allen 434. Libby v. Downey, 5 Allen 299. Sawyer v. Smith, 109 Mass. 220. Huey v. Passarelli, 267 Mass. 578, 582.
The memorandum of the trial judge in the instant case states: “I find plaintiff received the checks in payment of a debt due him from payee. I have not treated plaintiff other than as assignee of payee and have considered available against him all defenses available against the payee — . ’ ’
This being so, the defense of illegality was open to the defendant and as maker of the check he was not estopped to rely upon this defense. Wolff v. Perkins, 254 Mass. 10.
Under the defense of illegality, we are of the opinion that the defendant had a right to have the regulation in evidence *81 considered by the trial judge, in order to properly arrive at a conclusion under Bequest 3 as to whether or not the transaction in question violated the provisions of the Emergency Price Control Act, which, had this been done, the trial judge may have found the sale to have been illegal, and, arrived at a different decision.
New Trial Granted.